UNITED STATES *ex rel.* LEVEY *v.* STOCKSLAGER.

ERROR TO THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

No. 1481.   Argued January 24, 25, 1889. — Decided March 5, 1889.

The act approved March 2, 1867, c. 208, 14 Stat. 635, confirmed to the widow and children of one Bouligny, the one sixth part, amounting to 75,840 acres, of a certain land claim in Louisiana, and enacted that, inasmuch as the land embraced in the claim had been appropriated by the United States to other purposes, certificates of new location, in eighty-acre lots, be issued to the widow, in lieu of said lands, to be located on public lands.   The next Congress, twenty-eight days afterwards, and on March 30, 1867, passed a joint resolution, which was approved by the President, directing the Secretary of the Interior to suspend the execution of the act, "until the further order of Congress."   No action had meantime been taken by the General Land Office to carry out the act.   On a petition by

the widow for a mandamus to the Commissioner of the General Land Office directing him to execute and deliver to her the certificates: *Held*,

(1) The execution of the act was suspended not merely until the further order of the same Congress which passed the joint resolution, but until the further order of the legislative body called, in Section 1, of Article 1, of the Constitution, " a Congress of the United States ";

(2) The act did not vest in the beneficiaries a title to specific land, nor give them a vested right in the certificates which were to be issued;

(3) No vested right, amounting to property, had attached at the time of the approval of the joint resolution, and it did not deprive the beneficiaries of any property, or right of property, in violation of the Constitution;

(4) If the claim, founded on the act, amounted to a contract, the demand for relief would be substantially a prayer for a specific performance of the contract by the United States, jurisdiction to grant which was not given by statute to the court below.

PETITION for a writ of mandamus. The case is stated in the opinion.

*Mr. Walter H. Smith* and *Mr. A. B. Browne* (with whom were *Mr. A. T. Britton* and *Mr. S. W. Johnston* on the brief) for plaintiff in error.

*Mr. Heber J. May* and *Mr. Attorney General* for defendant in error.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is a writ of error to review a judgment of the Supreme Court of the District of Columbia, in general term. The writ is brought by the United States, on the relation of Mary Elizabeth Levey, intermarried with George Collins Levey, against Strother M. Stockslager, Commissioner of the General Land Office.

Mary Elizabeth Levey filed a petition in the Supreme Court of the District of Columbia, praying for a writ of mandamus. The petition set forth that the petitioner was formerly Mary Elizabeth Bouligny, the widow of John E. Bouligny, deceased, and the person named in the act of Congress of March 2, 1867, hereinafter set forth; and that she is now the wife of George Collins Levey, and was such on the 29th of March, 1888. The act of Congress referred to (c. 208, 14 Stat. 635) was set forth in the petition, and is in these words:

"*An act for the Relief of the Heirs of John E. Bouligny.*

"*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That there be, and hereby is, confirmed to Mary Elizabeth Bouligny, Corrinne Bouligny, and Felice Bouligny, widow and children of John E. Bouligny, deceased, the one sixth part of the land claim of Jean Antoine Bernard D'Autrive, in the State of Louisiana, said one sixth part amounting to seventy-five thousand eight hundred and forty acres ; and that, inasmuch as the said land embraced in said claim *have* [has] been already appropriated by the United States to other purposes, certificates of new location, in eighty-acre lots, be issued to the said Mary Elizabeth Bouligny, for her own benefit and that of her said minor children, in lieu of said lands, to be located at any land office in the United States, upon any public lands subject to private entry at a price not exceeding one dollar and twenty-five cents per acre. The commissioner of the general land office is hereby directed to issue said certificates of new location in accordance with existing regulations in such cases.

"APPROVED, March 2, 1867."

The petition set forth, that, on the 6th of March, 1867, the petitioner's attorney filed with the Commissioner of the General Land Office a certified copy of said act, and requested that the certificates of new location named in the act be issued; that the act was passed by the Thirty-ninth Congress, which adjourned on the 3d of March, 1867; that, at the next session of Congress, being the Fortieth Congress, the latter Congress, on the 30th of March, 1867, passed the following joint resolution (No. 35, 15 Stat. 353:)

"*Joint Resolution directing the Secretary of the Interior to suspend the Execution of a Law passed by the Thirty-Ninth Congress for the Relief of the Heirs of John E. Bouligny.*

"*Be it resolved by the Senate and House of Representatives of the United States of America in Congress assembled,* That the Secretary of the Interior be directed to suspend the execu-

tion of the act entitled ' An act for the relief of the heirs of John E. Bouligny,' approved March second, eighteen hundred and sixty-seven, until the further order of Congress.

" APPROVED, March 30, 1867 ; "

that Congress had made no " further order " in the matter; that the defendant was, on the 29th of March, 1888, and since had been, and now is, Commissioner of the General Land Office of the United States; that the petitioner, on that day, demanded of him, as such Commissioner, that he issue to her, for her own benefit and that of her minor children named in the act, certificates of new location for 75,840 acres, in eighty-acre lots, locatable at any land office in the United States, upon any public lands subject to private entry at a price not exceeding $1.25 per acre; that such demand was made in writing, at the office of the said Commissioner, in Washington; that he, on the 12th of April, 1888, refused to grant that request; that on the 13th of April, 1888, she duly appealed from the decision and refusal of the Commissioner to the Secretary of the Interior; that the said Secretary, on the 3d of May, 1888, approved the decision of the Commissioner; and that she had theretofore repeatedly made application to the Commissioners of the General Land Office to issue said certificates of new location, and always met with a refusal to issue them.

The petition prayed that a writ of mandamus might issue to the said Commissioner, directing him to execute and deliver such certificates to her.

On an order to show cause, returnable in the general term of the court, the respondent put in an answer, setting forth that no action had been taken by the General Land Office, for the purpose of carrying out and giving effect to the provisions of the act of March 2, 1867, prior to the passage of the joint resolution of March 30, 1867; that, by the passage of such joint resolution, the power of the respondent to issue the certificates was suspended until the further order of Congress; that Congress had made no further order; that the act of March 2, 1867, did not give to the relator or to the heirs of John E. Bouligny a vested right to the certificates; that, as the act of

March 2, 1867, directed the Commissioner to issue the certifi-
cates "in accordance with existing regulations in such cases,"
it would have imposed upon the respondent the exercise of an
official duty, within his discretion, and not reviewable by the
court; that such official duty is not a ministerial duty; that,
if the relator had acquired a vested right to the certificates
under the act, a remedy was afforded in the Court of Claims,
under § 1059, to recover their value, provided the petition set-
ting forth the claim had been presented to the court within six
years after the claim first accrued; and that the petition ought
to be dismissed.

The relator put in a demurrer to the answer, on the ground
that it did not set up any legal defence; that the remedy in
the Court of Claims, suggested by the answer, did not exist in
law; that the right in the certificates, given by the act of Con-
gress, was a vested right, which could not be and was not
taken away by the joint resolution; and that the joint resolu-
tion was unconstitutional and void.

The court in general term overruled the demurrer, and, the
relator electing to stand upon it, a judgment was entered, dis-
charging the rule to show cause and dismissing the petition.

An opinion was delivered by the court in general term. It
held that the act of March 2, 1867, was not a grant, and noth-
ing passed by it; that the Louisiana lands named in it were
never possessed by the confirmees, and were not to be pos-
sessed by them; that under such circumstances there could be
no confirmation in regard to them; that the provision for cer-
tificates in lieu of them was not a grant, and nothing passed
by it, because it was wholly executory; that, the certificates
never having been prepared or come into existence, the effect
of the joint resolution could, at most, only be to impair the
obligation of a contract, and was not the taking of private
property; that the contract supposed to exist by virtue of the
act of March 2, 1867, could not be enforced either by the
executive or the courts, until the United States should grant
permission for such enforcement, nor after such permission had
been withdrawn; that the power to perform the contract, and
the right to insist upon its performance, existed only while such

permission existed; that the relief sought by the relator amounted to a specific performance of the alleged contract of the United States, by one of its officers; that this could not be enforced when the United States had withdrawn its consent; that a writ of mandamus to compel the performance of an official act by a public officer could not be employed to enforce the specific performance by the United States of a contract; and that the respondent had no official duty or power in the premises since the passage of the joint resolution.

The principal question argued at the bar was as to the effect of the joint resolution in suspending the execution of the prior act. There is nothing in the suggestion of the relator that the joint resolution intended only a suspension of the execution of the act during the existence of the Fortieth Congress, and until that Congress should further order. We do not think that such is the proper construction of the joint resolution. It suspends the execution of the act "until the further order of Congress," that is, until the further order of the legislative body called, in Section 1, of Article 1, of the Constitution, "a Congress of the United States," consisting of a Senate and House of Representatives, in which are declared to be vested all legislative powers granted by the Constitution. The joint resolution was one of the character mentioned in Section 7, of Article 1, of the Constitution, to which the concurrence of the Senate and House of Representatives was necessary, and which was approved by the President, and took effect only on such approval. It had all the characteristics and effects of the act of March 2, 1867, which became a law by the approval of the President. Until Congress should further order, the operation of the act of March 2, 1867, was by the joint resolution effectually suspended.

The present case is not at all like the cases of which *Whitney* v. *Morrow*, 95 U. S. 551 and 112 U. S. 693 is a type. The statute involved in that case was the act of February 21, 1823, c. 10, 3 Stat. 724, in reference to land claims in the Territory of Michigan. The third section of that act directed that patents should be issued to persons whose claims to land had been regularly filed with the commis-

sioners appointed under the act of May 11, 1820, c. 85, 3 Stat. 572, and whose claims had been favorably reported on by said cᴏ ᴍissioners; and the statute confirmed such persons in their claims. That was a statute confirming to persons claims to specific lands, and the patents were to issue for those very lands. The principle established by the decisions of this court in regard to such cases is one always to be adhered to. We do not depart from it in the present case, but only hold that it is not applicable here. The principle thus applied in *Morrow* v. *Whitney, supra,* is, that an act of Congress recognizing the validity of the claim of an individual to specific land, as against the United States, operates to transfer to him the interest of the United States, as effectually as a grant could have done; and, where such individual has the possession of the land, or some estate in it, and the United States still hold the legal title to it, the confirmation is substantially a conveyance of an estate or right in the land by the United States to such individual; and, where the land has boundaries which are clearly defined, or are capable of identification, such confirmation perfects the claimant's title to the very land, without the issuing of any patent therefor. But this doctrine necessarily applies only to a case where the United States intend, by the statute, to transfer to, and vest in, the beneficiary, a title to specific land. The present is not such a case. What is stated by the act of March 2, 1867, to be confirmed is "the one sixth part of the land claim" mentioned, said one sixth amounting to 75,840 acres; but the statute states that the land embraced in the claim has "been already appropriated by the United States to other purposes." Therefore, the beneficiaries could acquire no title to it from the United States. The act then proceeds to provide for the issuing of certificates of new location, not covering any part of the 75,840 acres which had been already appropriated by the United States to other purposes, nor covering any specific public lands. The new lands were to be "in lieu" of the lands lost, and were to be selected and located at some land office, and upon public lands which were subject to private entry, and were so subject at a price not exceeding $1.25 per

acre; and the certificates were to be issued by the Commissioner of the General Land Office "in accordance with existing regulations in such cases."

Nor did the act of March 2, 1867, give to the widow and children of Bouligny a vested right in the certificates of new location which were to be issued. No certificates were prepared for issue; no step was taken by the Commissioner of the General Land Office towards issuing them; no new lands were selected or located; and the whole thing remained *in fieri*, and subject to the control of Congress.

The cases cited by the counsel for the relator, of *Fletcher* v. *Peck*, 6 Cranch, 87; *Dartmouth College* v. *Woodward*, 4 Wheat. 518; *McGee* v. *Mathis*, 4 Wall. 143; and *United States* v. *Schurz*, 102 U. S. 378, do not apply to the present case. There was here no contract between the United States and the widow and children of Bouligny, in the sense of the cases referred to. In *Fletcher* v. *Peck*, a tract of land had been sold by the Governor of Georgia under the authority of an act of the legislature, to persons who had conveyed it to purchasers for a valuable consideration without notice. It was held that a subsequent legislature could not afterwards repeal the act on the ground that it had been passed through bribery. In *Dartmouth College* v. *Woodward*, it was held that a charter granted to a private corporation was a contract. In *McGee* v. *Mathis*, it was held that a direct grant of land by the United States to a State was a contract; and in that case the scrip had been issued by the State, and was in the hands of the person entitled to receive it, and for that reason it was held that it represented land, and that the act under which it had been issued could not be repealed by the State. In *United States* v. *Schurz*, a patent for land had been signed, sealed, perfected, and recorded, and the power of the land department over it had ceased, so that a writ of mandamus to the Secretary of the Interior, to deliver it to the person in whose favor it had been made out, would lie.

It is also contended for the relator, that she acquired, under the act of March 2, 1867, a right which amounted to property, and of which she could not be deprived by the United States

under the joint resolution, because that was not due process of law. But we are of opinion that the cases cited on that subject by the relator are not applicable. Inasmuch as nothing had been done by the officers of the land department under the act of March 2, 1867, and no certificates had been made out, and the whole matter still remained executory, no vested right had attached at the time of the approval of the joint resolution. Therefore, that resolution did not deprive the widow and children of any property, or right of property, in violation of the Constitution. The transaction was merely the ordinary one of a direction by statute to a public officer to perform a certain duty, and a subsequent direction to him by statute, before he had performed that duty or had entered upon its performance, not to perform it. *Williams* v. *County Commissioners*, 35 Maine, 345; *Butler* v. *Palmer*, 1 Hill, 324; *Hampton* v. *Commonwealth*, 19 Penn. St. 329; Sedgwick on Stat. and Const. Law, Pomeroy's notes, 2 ed. 112.

But if the contention of the relator, that the provisions of the act of March 2, 1867, amounted to a contract between the United States and the widow and children, were correct, that very fact would show that the relief here sought could not be granted to the relator. She prays for a writ of mandamus against the Commissioner of the General Land Office, to issue and deliver to her the certificates of new location; but, in case her claim were in fact founded on contract, her demand for relief would substantially amount to a prayer that the United States be decreed specifically to perform the contract. No jurisdiction is given by any statute to the Supreme Court of the District of Columbia of a suit against the United States or a public officer for the specific performance of a contract made by the United States.

On the whole case, we are of opinion that the judgment of the court below, in general term, must be

*Affirmed.*