## UNITED STATES *v.* ROWELL ET AL.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF OKLAHOMA.

No. 63. Argued November 2, 3, 1916.—Decided April 9, 1917.

In the exercise of its guardian powers over tribal Indians through allotment of lands of their reservation and conversion of surplus lands into tribal funds, Congress is free to adjust its action to meet new and changing conditions so long as no fundamental right is violated.

Having enrolled a white man as an adopted member of an Indian tribe, and authorized and directed the Secretary of the Interior to issue him a patent in fee for a designated tract of the tribal land as his allotment, to be in lieu of all claim on his part to allotment or to money settlement in lieu thereof, Congress had power to recall the direction before the fee had passed, upon finding that the tract designated had been lawfully devoted to a special use (e. g., school purposes) from which it could not be withdrawn with due regard for the tribe, or that in situation and value it exceeded a fair distributive share of the common property—this without prejudice to the right of the allottee to obtain another allotment in the usual way.

An act of Congress directing the Secretary of the Interior "to issue a patent in fee" to a designated member of an Indian tribe for a designated tract of land set apart as his allotment, but containing no other words indicative of an intention to pass title by the act itself, *Held*, not a grant *in præsenti*.

Such a provision calls for no acceptance other than such as would be implied from taking the patent when issued.

A direction by Congress that a patent be issued an individual for land assigned him as an Indian allotment is to be regarded, not as a proposal by the Government which upon acceptance makes a contract, but as a law amendable and repealable at the will of Congress, subject to the qualification that rights created by the execution of such provision can not be divested or impaired. *Levey* v. *Stockslager, Commissioner,* 129 U. S. 470.

THE case is stated in the opinion.

*Mr. Assistant Attorney General Warren,* with whom *Mr. S. W. Williams* was on the brief, for the United States.

*Mr. Henry E. Asp,* with whom *Mr. Henry G. Snyder, Mr. Frederick B. Owen* and *Mr. Walter A. Lybrand* were on the briefs, for defendants in error.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This is an action in ejectment brought by the United States against James F. Rowell and two others. The land in controversy is a quarter-section—one hundred sixty acres—in an Indian school reserve in Comanche County, Oklahoma.

Three statutes, all enacted in the same year, must be noticed. The first of these is a provision in the Act of April 4, 1910, c. 140, 36 Stat. 269, 280, authorizing and directing the Secretary of the Interior "to enroll and allot" James F. Rowell as an adopted member of the Kiowa tribe of Indians. The second is the following provision in the Act of June 17, 1910, c. 299, § 3, 36 Stat. 533: "That the Secretary of the Interior is hereby authorized and directed to issue a patent in fee for" the tract in controversy "to James F. Rowell a full member of the Kiowa, Comanche and Apache Tribes of Indians of Oklahoma, who has heretofore received no allotment of land from any

source; this to be in lieu of all claims to any allotment of land or money settlement in lieu of an allotment." And the third is the express repeal of the provision just quoted by the Act of December 19, 1910, c. 3, 36 Stat. 887. The controversy turns chiefly upon the true construction and effect of the provision of June 17 and the constitutional validity of the repealing provision of December 19. These questions are to be solved in the light of the following facts:

A patent was not issued to Rowell. He asked for one, but, at the suggestion of the chairmen of the Committees on Indian Affairs in the Senate and House of Representatives, the President, in whose name such patents are issued, withheld his signature from the patent and directed that nothing be done until Congress could further consider the matter. Congress was not then in session and when it reconvened the matter was again considered, with the result that the provision in the Act of June 17 was repealed.

The tract in controversy was part of a large reservation established by treaties in 1868 as a permanent home for the Kiowa, Comanche and Apache Indians. 15 Stat. 581, 589. In 1901 the members of these tribes were given allotments in severalty in this reservation and the greater part of the remaining lands was disposed of by the United States,—what was deemed to be their fair value being credited to the Indians as a trust fund. 31 Stat. 676, c. 813, § 6. At that time a portion of the reservation, embracing the tract in controversy, was set apart for school purposes for these Indians, and this school reserve is still maintained and used for their benefit. The tribal relation of these Indians has not been terminated. They are still in a state of pupilage and under the control of the United States. It retains the title to their allotments and administers their tribal affairs and property.

James F. Rowell is a white man who went to the large

reservation as an Indian trader in 1899 and has since lived with these Indians. He is a physician and has practiced among them. In 1903 he married a Kiowa woman and in 1909 was adopted as a member of the tribe. His wife received an allotment from the tribal lands in 1900 and some of their children received allotments in 1906 or 1908. 34 Stat. 214, c. 2580, § 6; 35 Stat. 456, c. 216, § 24. But no allotment had been made to him when the provision of June 17, 1910, was enacted. It was enacted at his solicitation, and the Committees on Indian Affairs in the Senate and House of Representatives, in recommending its repeal, reported that it was enacted in the belief that the tract described was of no greater value than the average of those allotted to other members of the tribe, or than other tracts still subject to allotment, when in truth it was of vastly greater value; and that misrepresentation and deception were practiced by Rowell in securing the legislation. Senate Report No. 924 and House Report No. 1741, 61st Cong., 3rd sess. About two years before, the south half of the same section—three hundred and twenty acres—had been sold for townsite purposes under the Act of March 27, 1908, c. 106, 35 Stat. 49, for upwards of $250,000.

In June, 1911, six months after the date of the repealing act, Rowell entered upon the tract in controversy and since then has remained in possession, although promptly notified, through the Indian Agent, that he was a trespasser and must vacate the premises. One of the defendants is Rowell's wife and another is the wife of a lawyer who assisted him in securing the passage of the provision which Congress felt called upon to repeal. She holds a deed from Rowell made after the date of the repealing act and purporting to convey to her an undivided one-half interest in the tract for a recited consideration of $50,000. The three defendants had come to be in possession when the action was begun. In the District Court

there was a directed verdict and a judgment for the defendants.

Congress was here concerned with the affairs of Indians whose tribal relation had not been dissolved—Indians who were still wards of the United States and entitled to look to it for protection. The plan of giving them individual allotments in the reservation theretofore established as a tribal home and of converting the surplus lands into interest-bearing funds was not theirs. But it was obligatory on them, because it was adopted by Congress in the exercise of its control over them. As in other instances, the wish of the ward had to yield to the will of the guardian. And Congress was free to exert this guardianship in any manner which it deemed appropriate, and to adjust its action to new or changing conditions, so long as no fundamental right was violated.[1]

In view of the scope of this power, as reflected by over a century of practice and by the decisions of this court, we think it was quite admissible for Congress to give effect to Rowell's status as an adopted member of the tribe, to recognize his claim to an allotment out of the tribal lands, to designate the land which he should receive and to direct that it be conveyed to him by a patent in fee without awaiting the expiration of the usual trust period of twenty-five years. And if, before that direction was complied with, it was discovered that the land designated was lawfully devoted to a special use from which it could not be withdrawn with due regard for the tribe in general, or that its situation and value were such that to allot or to convey it to him would invest him with much more than a fair distributive share of the common property of the tribe, we think it was equally admissible for Congress

---

[1] *Stephens* v. *Cherokee Nation*, 174 U. S. 445, 488; *Cherokee Nation* v. *Hitchcock*, 187 U. S. 294, 307; *Lone Wolf* v. *Hitchcock*, 187 U. S. 553, 564; *Gritts* v. *Fisher*, 224 U. S. 640, 648; *Choate* v. *Trapp*, 224 U. S. 665, 671; *Sizemore* v. *Brady*, 235 U. S. 441, 449.

to recall that direction in the interest of the tribe as a whole. At most that direction was but an exertion of the administrative control of the Government over the tribal property of tribal Indians, and was subject to change by Congress at any time before it was carried into effect. *Gritts* v. *Fisher*, 224 U. S. 640, 648. If the rule were otherwise and the quarter-section upon which the Indian school buildings are situate had been inadvertently designated as the land which he should receive, the situation might have been one of great embarrassment. See *United States* v. *Des Moines Navigation & Railway Co.*, 142 U. S. 510, 544; *United States* v. *Old Settlers*, 148 U. S. 427, 466; Cooley's Const. Lim., 7th ed. 257–259.

But it is insisted that the provision of June 17, 1910, was a grant *in præsenti* and operated in itself to pass the full title to Rowell, and therefore that he had a vested right in the land which the repealing act could not affect. If the premise be right the conclusion is obviously so. But is the premise right? Of course, a grant may be made by a law as well as by a patent issued pursuant to a law, but whether a particular law operates in itself as a present grant is always a question of intention. We turn, therefore, to the provision relied upon to ascertain whether it discloses a purpose to make such a grant, that is to say, a purpose to pass the title immediately without awaiting the issue of a patent. We find in it no words of present grant, but only a direction to the Secretary of the Interior "to issue a patent in fee" to Rowell for the tract described. Only through this express provision for a patent do we learn that a grant is intended, and if it were eliminated nothing having any force would remain. This, we think, shows that a present statutory grant was not intended, but only such a grant as would result from the issue of a patent as directed. The cases cited as making for a different conclusion are plainly distinguishable in that they deal with laws or treaties making grants and

either containing no provision for a patent or providing for one merely by way of further assurance.

It is also insisted that, by applying for a patent before the provision therefor was repealed, Rowell accepted that provision and thereby acquired a right to have it carried into effect of which he could not be divested by the repealing act consistently with due process of law. But the provision did not call for an acceptance and it is evident that none was contemplated, other than such as would be implied from taking the patent when issued. Besides, statutes of this type are not to be regarded as proposals by the Government to enter into executory contracts, but as laws which are amendable and repealable at the will of Congress, save that rights created by carrying them into effect cannot be divested or impaired. *Gritts* v. *Fisher*, 224 U. S. 640, 648; *Choate* v. *Trapp*, 224 U. S. 665, 671; *Sizemore* v. *Brady*, 235 U. S. 441, 449. A case much in point is *Levey* v. *Stockslager, Commissioner*, 129 U. S. 470. The facts out of which it arose are these: By an Act of March 2, 1867, Congress confirmed to the widow and children of a deceased claimant the one-sixth part, amounting to 75,840 acres, of an old land claim, and then, after reciting that the Government had appropriated the land to other purposes, directed the Commissioner of the General Land Office to issue to the widow and children certificates of location in eighty-acre lots locatable upon public lands at any land office, in lieu of their asserted interest in the old claim. Four days later the widow and children requested the Commissioner to issue the certificates, but the request was not complied with. On the 30th of the same month Congress by a joint resolution, approved by the President, directed that the execution of the act, be suspended, and the suspension was not subsequently removed. The widow and children contended that in view of what was done they were entitled, in a contractual sense, to the certificates and had acquired a vested right

to them of which they could not be deprived by the joint resolution without denying them due process of law. But both phases of their contention were denied, it being said in the course of the opinion that "the whole thing remained *in fieri*, and subject to the control of Congress," that "there was here no contract between the United States and the widow and children" in the sense contended, that the joint resolution "did not deprive the widow and children of any property, or right of property, in violation of the Constitution," and that "the transaction was merely the ordinary one of a direction by statute to a public officer to perform a certain duty, and a subsequent direction to him by statute, before he had performed that duty or had entered upon its performance, not to perform it."

For these reasons we conclude that the repealing provision was valid, and that while it did not affect Rowell's status as an adopted member of the tribe or his right to obtain in the usual way an allotment from the tribal lands not specially reserved, it did revoke the special provision made in his behalf in the Act of June 17, 1910.

It results that the verdict, instead of being directed for the defendants, should have been directed for the Government as was requested. This requires that the judgment be reversed and the cause remanded for a new trial.

*Judgment reversed.*