### REYNOLDS v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. May 3, 1918.)

No. 4983.

1. INDIANS ⬤15(1)—LANDS—RESTRICTIONS ON ALIENATION.

Under Act Feb. 8, 1887, § 5 (Comp. St. 1916, § 4201), relating to Indian allotments, which provided that "upon the approval of the allotments provided for in this act by the Secretary of the Interior he shall cause patents to issue therefor in the name of the allottees," the trust period during which the title was to be held in trust by the government began to run from the date of such approval, and not from the date of the patent.

2. INDIANS ⬤15(1)—LANDS—RESTRICTIONS ON ALIENATION.

Under statutory authority given the President to extend the period during which Indian allotments are held in trust by the government, a proclamation extending the period as to certain classes of allottees does not affect one whose period had already expired.

Trieber, District Judge, dissenting.

Appeal from the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Suit in equity by the United States against Suda Reynolds. Decree for complainant, and defendant appeals. Reversed and remanded, with instructions to dismiss bill.

---

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Mark Goode, of Shawnee, Okl. (Hal Johnson, of Shawnee, Okl., on the brief), for appellant.

Lal D. Threlkeld, Asst. U. S. Atty., of Oklahoma City, Okl. (John A. Fain, U. S. Atty., of Lawton, Okl., on the brief), for the United States.

Before SANBORN, Circuit Judge, and TRIEBER and YOU-MANS, District Judges.

YOUMANS, District Judge. This is an appeal from a decree in which it is adjudged that appellant, Suda Reynolds, defendant below, has no right, title, or interest in a certain tract of land in Pottawatomie county, Okl. The suit was brought by the United States against the appellant as the grantee of one of the heirs of Stella Washington, an absentee Shawnee allottee, under the act of Congress approved February 8, 1887 (24 Stat. 388, c. 119 [Comp. St. 1916, §§ 4195–4210]), as amended by Act of Congress approved March 3, 1891 (26 Stat. 1019, c. 543). The allotment of the land in question was made under sections 3 and 5 of the act of February 8, 1887, which sections, so far as applicable here, read as follows:

"Sec. 3. That the allotments provided for in this act shall be made by special agents appointed by the President for such purpose, and the * * * agents in charge of the respective reservations on which the allotments are directed to be made, * * * under such rules and regulations as the Secretary of the Interior may from time to time prescribe, and shall be certified by such * * * agents to the Commissioner of Indian Affairs, in duplicate, one copy to be retained in the Indian Office and the other to be transmitted to the Secretary of the Interior for his action, and to be deposited in the General Land Office. * * *

"Sec. 5. That upon the approval of the allotments provided for in this act by the Secretary of the Interior, he shall cause patents to issue therefor in the name of the allottees, which patents shall be of the legal effect, and declare that the United States does and will hold the land thus allotted, for the period of twenty-five years, in trust for the sole use and benefit of the Indian to whom such allotment shall have been made, or, in case of his decease, or his heirs according to the laws of the state or territory where such land is located, and that at the expiration of said period the United States will convey the same by patent to said Indian, or his heirs as aforesaid, in fee, discharged of said trust and free of all charge or incumbrance whatsoever: Provided, that the President of the United States may in any case in his discretion extend the period. And if any conveyance shall be made of the lands set apart and allotted as herein provided, or any contract made touching the same, before the expiration of the time above mentioned, such conveyance or contract shall be absolutely null and void."

[1] Under the authority conferred by these sections, allotments were made by the proper officers, a schedule of the allotments, dated August 7, 1891, was deposited in the General Land Office of the United States and on the 16th of September, 1891, these allotments were approved by the Secretary of the Interior. The allotment of the land in question to Stella Washington was included in the schedule and in the approval.

Section 5 above quoted, provides for a trust period of 25 years, which period could be extended by the President of the United States at his discretion. The preliminary or trust patent was issued to Stella

Washington, February 6, 1892. On the 24th of November, 1916, the President made the following order:

"It is hereby ordered, under authority contained in section 5 of the act of February 8, 1887 (24 Stats. 388, 389), that the trust periods on the allotments of the Absentee Shawnee and Citizen Pottawatomie Indians in Oklahoma, which trust expires during the calendar year 1917, be and is hereby extended for a period of ten years from the dates of expiration, with the exception of the following."

Then follow numbers of allotments and names of allottees. Stella Washington's name and number do not appear in the list.

Appellant contends that the trust period began on the 16th of September, 1891, the date of the approval of the allotments by the Secretary of the Interior, and that it had expired on the 24th of November, 1916, the date of the President's order. The conveyance to appellant was executed February 17, 1917. The government contends that the trust period began, so far as the land involved in this case is concerned, on the 6th of February, 1892, the date of the preliminary or trust patent, and that as to such land the trust period expired on the 6th day of February, 1917.

Each allottee became entitled to his preliminary or trust patent upon the approval of the allotments by the Secretary of the Interior. The issuance of the patent was a mere ministerial act. The beginning of the trust period under the act of Congress did not depend upon the time of the performance of the ministerial act by the officers of the General Land Office.

Counsel for the government contend that the case of United States v. Rowell, 243 U. S. 464, 37 Sup. Ct. 425, 61 L. Ed. 848, is decisive of the question involved here. In that case Mr. Justice Van Devanter, speaking for the court, said:

"This is an action in ejectment brought by the United States against James F. Rowell and two others. The land in controversy is a quarter section—160 acres—in an Indian school reserve in Comanche county, Okl. Three statutes, all enacted in the same year, must be noticed. The first of these is a provision in Act April 4, 1910, c. 140, 36 Stat. 269, 280, authorizing and directing the Secretary of the Interior 'to enroll and allot' James F. Rowell as an adopted member of the Kiowa Tribe of Indians. The second is the following provision in Act June 17, 1910, c. 299, § 3, 36 Stat. 533: 'That the Secretary of the Interior is hereby authorized and directed to issue a patent in fee for' the tract in controversy 'to James F. Rowell a full member of the Kiowa, Comanche and Apache Tribes of Indians of Oklahoma, who has heretofore received no allotment of land from any source; this to be in lieu of all claims to any allotment of land or money settlement in lieu of an allotment.' And the third is the express repeal of the provision just quoted by Act Dec. 19, 1910, c. 3, 36 Stat. 887. The controversy turns chiefly upon the true construction and effect of the provision of June 17 and the constitutional validity of the repealing provision of December 19. * * *

"But it is insisted that the provision of June 17, 1910, was a grant in præsenti, and operated in itself to pass the full title to Rowell, and therefore that he had a vested right in the land which the repealing act could not affect. If the premise be right, the conclusion is obviously so. But is the premise right? Of course, a grant may be made by a law, as well as by a patent issued pursuant to a law; but whether a particular law operates in itself as a present grant is always a question of intention. We turn, therefore, to the provision relied upon to ascertain whether it discloses a purpose to make such a grant; that is to say, a purpose to pass the title immediately

without awaiting the issue of a patent. We find in it no words of present grant, but only a direction to the Secretary of the Interior 'to issue a patent in fee'. to Rowell for the tract described. Only through this express provision for a patent do we learn that a grant is. intended, and if it were eliminated nothing having any force would remain. This, we think, shows that a present statutory grant was not intended, but only such a grant as would result from the issue of a patent as directed. The cases cited as making for a different conclusion are plainly distinguishable, in that they deal with laws or treaties making grants, and either containing no provision for a patent or providing for one merely by way of further assurance.

"It is also insisted that, by applying for a patent before the provision therefor was repealed, Rowell accepted that provision and thereby acquired a right to have it carried into effect, of which he could not be divested by the repealing act consistently with due process of law. But the provision did not call for an acceptance, and it is evident that none was contemplated, other than such as would be implied from taking the patent when issued. Besides, statutes of this type are not to be regarded as proposals by the government to enter into executory contracts, but as laws which are amendable and repealable at the will of Congress, save that rights created by carrying them into effect cannot be divested or impaired. Gritts v. Fisher, 224 U. S. 640, 648 [32 Sup. Ct. 580, 56 L. Ed. 928]; Choate v. Trapp, 224 U. S. 665, 671 [32 Sup. Ct. 565, 56 L. Ed. 941]; Sizemore v. Brady, 235 U. S. 441, 449 [35 Sup. Ct. 135, 59 L. Ed. 308]. * * * For these reasons we conclude that the repealing provision was valid, and that, while it did not affect Rowell's status as an adopted member of the tribe, or his right to obtain in the usual way an allotment from the tribal lands not specially reserved, it did revoke the special provision made in his behalf in the act of June 17, 1910."

The Supreme Court in that case held that an act of Congress directing that a patent be issued to an individual could be repealed by Congress before the patent itself was delivered, and that no constitutional right was violated by the repealing act. The instant case presents a different question. The right of Stella Washington to a preliminary or trust patent became vested on the day of the approval of her allotment. Her equitable title was then complete, and did not depend upon the delivery of the patent. Ballinger v. Frost, 216 U. S. 240, 30 Sup. Ct. 338, 54 L. Ed. 464.

The postponement of the performance of the ministerial act of causing a patent to be prepared and signed could not postpone the vesting of the equitable interest in Stella Washington, nor could it postpone the beginning of the trust period. In the case of Monson v. Simonson, 231 U. S. 341, 34 Sup. Ct. 71, 58 L. Ed. 260, there is presented an instance in which a specific allotment was by act of Congress relieved from the restrictions imposed during the trust period and the Secretary of the Interior was authorized to cause to be delivered to the allottee an unconditional patent. In that case the court said:

"It also is plain that, in the absence of further and permissive legislation, the Secretary of the Interior was without authority to shorten the trust period and at once invest the allottee with the title in fee. Recognizing that this was so, and for reasons deemed sufficient, Congress, by the provision in the act of March 3, 1905, clothed the Secretary with such authority with respect to this allotment. That provision says: 'The Secretary of the Interior is hereby authorized and empowered to issue a patent' to the allottee. By 'patent' is meant of course, the ultimate patent passing the fee, for the trust patent or allotment certificate had issued 16 years before. The language of the provision is permissive, not mandatory, and evidently was designed to enable the Secretary to shorten the trust period, by issuing the final patent, if in his judgment it seemed wise, but not to require him to do so. And it is

significant that the provision contains no words directly or presently removing the existing restrictions upon alienation, while other kindred provisions in the same act, relating to other allotments, contain the words 'and all restrictions as to sale, incumbrance, or taxation of said lands are *hereby* removed.' It hardly can be said that the absence of those words in this instance and their presence in others is not indicative of a difference in meaning and purpose. We conclude that the restrictions upon alienation contained in the act of 1887 were not instantly removed by the act of 1905. but remained in force as to this allotment until the Secretary of the Interior, in the exercise of the authority conferred by the latter act, terminated the trust period by issuing the final patent passing the fee."

The authorization to deliver a patent to the allottee was permissive and not mandatory as stated by the Supreme Court. The language of section 5 of the act of February 8, 1887, is mandatory. It says:

"That upon the approval of the allotments provided for in this act by the Secretary of the Interior, he shall cause patents to issue therefor in the name of the allottees, etc."

The Secretary is given no discretion with regard to the issuance of the patents.

It is urged that departmental construction is opposed to the views herein expressed. Such construction is always entitled to great consideration, but in this instance such construction is in our judgment opposed to the plain and unambiguous language of the statute. There are statutes in which Congress has provided that allotments shall be inalienable for a certain period from the date of the patent. Act March 2, 1889, c. 422, 25 Stat. 1013, 1014, providing for allotments 'to the Peorias and Miamies, contains the following provision:

"The land so allotted shall not be subject to alienation for twenty-five years from the date of the issuance of the patent therefor, and said lands so allotted and patented shall be exempt from levy, sale, taxation, or forfeiture for a like period of years."

Act March 2, 1895, c. 188, 28 Stat. 907, contains the following provision:

"Provided, that said allotments shall be inalienable for a period of twenty-five years from and after the date of said patents."

Act July 1, 1902, c. 1362, 32 Stat. 641, 642, contains the following provisions:

"12. Each member of said tribes shall, at the time of the selection of his allotment, designate as a homestead out of said allotment land equal in. value to one hundred and sixty acres of the average allotable land of the Choctaw and Chickasaw Nations, as nearly as may be, which shall be inalienable during the lifetime of the allottee, not exceeding twenty-one years from the date of certificate of allotment, and separate certificate and patent shall issue for said homestead.

"13. The allotment of each Choctaw and Chickasaw freedman shall be inalienable during the lifetime of the allottee, not exceeding twenty-one years from the date of certificate of allotment. * * *

"16. All lands allotted to the members of said tribes, except such land as is set aside to each for a homestead as herein provided, shall be alienable after issuance of patent as follows: One-fourth in acreage in one year, one-fourth in acreage in three years, and the balance in five years; in each case from date of patent."

[2] It thus appears that, whenever Congress desires to make the trust period begin with the date of the patent or certificate of allotment, it expressly says so. In our judgment the trust period expired September 16, 1916, before the issuance of the executive order of November 24th of the same year. The President had no power to revive the expired period nor to create another period. Congress created a trust period, and authorized the President to extend it in his discretion. Congress, however, did not authorize the President in his discretion to create a new trust period. The power to extend a trust period already created is one thing. The power to create a new trust period is an entirely different thing.

It follows that the case must be reversed and remanded, with directions to dismiss the bill of complaint. It is so ordered.

TRIEBER, District Judge (dissenting). I concur in the conclusions of the majority of the court that the trust period of 25 years began on September 16, 1891, the date of the approval of the allotment by the Secretary of the Interior, and that it had expired before the 24th day of November, 1916, the date of the President's order extending the trust period for ten years from the date of expiration. But in view of the decisions of the Supreme Court in Brader v. James, 246 U. S. 88, 38 Sup. Ct. 285, 62 L. Ed. 591, and Talley v. Burgess, 246 U. S. 104, 38 Sup. Ct. 287, 62 L. Ed. 600, opinions filed March 4, 1918, and the decisions of this court in David v. Youngken, 250 Fed. 208, —— C. C. A. ——, filed April 3, 1918, and Harris v. Bell, 250 Fed. 209, —— C. C. A. ——, opinion filed April 30, 1918, I am of the opinion that, as the President was authorized by the proviso in section 5 of the act of February 8, 1887 (34 Stat. 388), to extend the trust period in his discretion, he had the same power to extend it after the expiration of the first trust period as Congress had. The order by the President extending the trust period having been made before the conveyance of the allotment and without the approval of the Secretary of the Interior, the conveyance was absolutely void.

For this reason I am of the opinion that the decree of the District Court was right, and should be affirmed.