**ARTHUR–SMITH CORPORATION,**
Appellant,
v.
**GULF STATES MARINE & MINING COMPANY, Appellee.**
No. 17033.

United States Court of Appeals
Fifth Circuit.
Aug. 27, 1958.

Robert Eikel, Houston, Tex., J. Barbee Winston, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for appellant.

Thomas B. Wheeler, New Orleans, La., Wheeler, Stewart, Exnicious & Mestayer, New Orleans, La., for appellee.

Before RIVES, BROWN, and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

The libel in this case is based on a head-on collision that occurred in the Harvey Canal between the tug John Arthur, owned by Arthur-Smith Corporation, and a barge belonging to Gulf States Marine & Mining Company. The district court rendered its decree in favor of libellant. We agree.

At approximately seven o'clock in the morning, on February 4, 1954, the tugboat Dawn, owned by libellant, was proceeding in an easterly direction through the Harvey Canal toward the Harvey Locks. She had in tow two empty oil barges, both measuring 220 feet in length and 48 feet in width, and showing a freeboard of some 8½ feet. The Harvey Canal is virtually straight from the Harvey Locks to Five Mile Post. It measures approximately 375 feet between banks. According to regulations of the United States Army Corps of Engineers, tugs are allowed to make up their barges abreast, as did the Dawn, to a width greater than 55 feet in an area commencing 2.75 miles west of the locks and running on into the lock entrance. The district court found that the Dawn made up her tow abreast within the allowable area. Her tow at the time of the collision was 96 feet wide. The Dawn was pushing on the stern of the starboard most of the two barges, and her course was laid some 15 to 20 feet of the starboard bank. This was as close to the bank as she could go with any safety. As a result of this course, there were 259 feet on the port side of the Dawn in which other vessels could navigate.

Respondent's tugboat John Arthur, with three loaded barges in tow, proceeding in a westerly direction, came through the Harvey Locks from the Mississippi River. Once in the Harvey Locks she made up her barges in tandem. The John Arthur was made up so as to push the stern of the last barge. The John Arthur and its tow were in the middle of the channel. The barges in tow had a combined length of 550 feet, so that the master of the John Arthur was 550 feet behind the bow of his lead barge and was unable to see the entire length of the lead barge from the wheelhouse. The John Arthur's speed was two to three miles per hour.

There was some ground fog or haze on the Harvey Canal the morning of the collision. The two tugs saw each other and passing signals were exchanged agreeing to a port-to-port passing when they were approximately one-half mile apart. The thickness of the fog was variously described in the testimony, but the district court found that the fog was low so that no one on the Canal was blowing fog signals. The master of the Dawn testified that he could see clearly the John Arthur and her tow. Because of the fog, however, and the length of the tow, the master of the John Arthur saw the wheelhouse of the Dawn, but did not see her barges abreast and was unaware of their presence.

Shortly after the exchange of passing signals between the Dawn and John Arthur, the John Arthur exchanged passing signals for a starboard-to-starboard passing with the tugboat Independence. The Independence was proceeding in an easterly direction on the opposite side of the canal from the Dawn. The John Arthur veered to port toward the Dawn to effect its passing with the Independence.

At this point, and when the Dawn was making approximately a half a mile per hour, the collision occurred. The forward port corner of the lead barge of the John Arthur rammed about 12 feet inboard of the forward port corner of the Dawn's port barge. After the impact the John Arthur continued ahead and pushed the Dawn and tow several hundred feet astern. The collision occurred approximately two and one-half miles west of the Harvey Locks.

At the time the passing signals were exchanged between the Dawn and John

Arthur, and until the collision, the Dawn had her mate and tankerman stationed on her port barge as lookouts. The John Arthur did not have lookouts on her barges.

The district court held that the John Arthur was solely at fault because of the failure to station a lookout on the bow of the tow even though the master could not see the head of the tow; that the John Arthur was negligent in proceeding in a fog bank at an excessive rate of speed when visibility was limited and she was unable to stop within one half her length; that the John Arthur was negligent in failing to keep to the starboard side of the canal when the master was unable to determine whether the Dawn had a tow.

Appellant contends that: (1) the Dawn should have set her course closer to her own starboard bank, and that her failure to do so, her failure to blow danger signals, and her failure to reverse her engines were statutory faults which caused the collision; (2) the failure of the Dawn to blow fog signals contributed to the collision; (3) the Dawn was at fault in making up her tow to an excessive width at a point beyond the 2.75 mile limit.

Respondent argues that the Dawn had the last clear chance to avoid the collision; consequently, her failure to get closer to her starboard bank, her failure to blow danger signals, and her failure to reverse her engines were statutory faults which caused the collision. The district court disagreed with these contentions. On the record, its decree is not clearly erroneous.

We are asked to follow our decision in Crawford v. Indian Towing Company, 5 Cir., 1957, 240 F.2d 308, 311. In that case we held that last clear chance was applicable to show the fault of a vessel. Crawford is distinguishable from the instant case in various important respects. In Crawford, the Cherokee, the vessel held to have had the last clear chance to avoid the accident, was at all times aware of the fact that another vessel was approaching head on in its path. There was ample room and deep water for the unencumbered Cherokee to avoid the accident. Failure to do so was caused by the navigator's "blind insistence on a right of way". Under these circumstances the Court held that the Cherokee had the last clear chance. Rightly so.

Here we have another story. MacArthur, the relief captain of the Dawn, testified: "I didn't think he'd strike me. I figured he'd come close but I didn't— have the least idea they'd run together." He noticed the John Arthur angling over in his path only "after it was fairly close". He could see the tow (the light stanchions) of the John Arthur, and assumed that his own tow could be seen; he had no reasonable warning of a collision "until we was really close together", "approximately 100 feet". MacArthur had no reason to think a collision would happen until it was too late. He was already 15 to 20 feet from his starboard bank. This was as close as he could get without danger. He had no room to turn as in the Crawford case.

The failure to blow danger signals also brings into play the time element. The fact that the collision was not apparent until too late, through no fault of the Dawn, made the danger signal useless. It is the failure to give a danger signal when there is or should be an *awareness* of danger that constitutes statutory fault.[1] See Postal Steamship Corp. v. El Isleo, 1940, 308

1. Respondent refers to the cases of Parker Bros. & Co. v. De Forest, 5 Cir., 1955, 221 F.2d 377; C. J. Dick Towing Co. v. The Leo, 5 Cir., 1953, 202 F.2d 850; Smith v. Bacon, 5 Cir., 1952, 194 F.2d 203; G. B. Zigler Co. v. Barker Barge Line, 5 Cir., 1948, 167 F.2d 676. None of these cases is applicable. They all held that the failure to station a lookout, or the stationing of an incompetent lookout was a statutory fault that caused the collision. There is talk of danger signals in some of the cases, but no direct holding on that point. These cases are more helpful to the position maintained by libellant on the question of the John Arthur's failure to station a lookout.

U.S. 378, 60 S.Ct. 332, 84 L.Ed. 335; C. J. Dick Towing Co. v. The Leo, 5 Cir., 1953, 202 F.2d 850, 855. This was not the case with the Dawn.

Respondent raises a serious question with respect to the duty of a vessel proceeding in fog or mist to give fog signals. A tug with tow is required to sound three blasts in succession, one long and two short, at intervals not exceeding one minute, to warn other vessels in fog, mist or similar weather, that a tug in tow is nearby. 33 U.S.C.A. § 191(e).

██ This is not, however, an arbitrary rule giving rise to strict liability for any violation. The failure to sound a fog signal must be related to the cause of the collision; merely showing that no fog signal was blown is not enough. See The El Monte, 5 Cir., 1918, 252 F. 69, certiorari denied 248 U.S. 573, 39 S.Ct. 11, 63 L.Ed. 427. In the case of The Walter Franks, 2 Cir., 1924, 299 F. 319, 320, a tug traveling at three miles per hour collided with an anchored barge that was sounding no fog signals in a fog of "remarkable density". The court, holding that the tug caused the damage, said:

> " * * * it was inadvertently further held that the Franks [the tug at fault], although going at a rate of speed which rendered it impossible for her to stop within the distance objects could be seen, was not liable because the anchored barge was not ringing a lawful bell."

The Walter Franks case is very close to the case we have before us. The John Arthur was traveling at an excessive rate of speed in fog or mist without a lookout. The Dawn did not give fog signals. A vessel infringing a positive regulation such as giving fog signals must show affirmatively that such violation did not contribute to the collision. This principle has been settled since The Pennsylvania, 1873, 19 Wall. 125, 86 U.S. 125, 22 L.Ed. 148.

██ On the record, the libellant complied with his burden under the rule of The Pennsylvania. The record does not show that the failure to give fog signals caused the collision, or contributed to it. The John Arthur's failure to station a lookout under the circumstances, the failure to travel at a moderate speed in the fog, and the failure to stay on its starboard side were the cause of the collision. Gulf Oil Corp. v. The Socony No. 16, 2 Cir., 1947, 162 F.2d 869; The Sylvan Arrow, 2 Cir., 1939, 104 F.2d 102, certiorari denied Luckenbach Steamship Co. v. The Sylvan Arrow, 308 U.S. 603, 60 S.Ct. 140, 84 L.Ed. 504; The Silver Palm, 9 Cir., 1938, 94 F.2d 754.

The decree is

Affirmed.