# GRITTS *v.* FISHER, SECRETARY OF THE INTE-RIOR, AND MACVEAGH, SECRETARY OF THE TREASURY.

## APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF· COLUMBIA.

No. 896.   Argued January 10, 11, 1912.—Decided May 13, 1912.

Children born to enrolled members of·the Cherokee tribe after September 1, 1902, and living on March 4, 1906, are entitled to enrollment as members of the tribe and to participation in the allotment and distribution of its lands and funds made under the act of July 1, 1902, 32 Stat. 725, c. 1375, and subsequent acts relating to such allotment and distribution.

Section 2 of the act of April 26, 1906, as amended June 21, 1906, for the enrollment of minor children living March 4, 1906, is not to be construed as excluding those born after September 1, 1902.

Under the act of July 1, 1902, individual members of the Cherokee tribe did not individually acquire any vested rights in the surplus lands and funds of the tribe that disabled Congress from thereafter making provision for admitting newly-born members of the tribe to the allotment and distribution, as it did by the act of April 26, 1906.

The act of July 1, 1902, limiting the allottees and distributees of Cherokee lands and funds, was not a contract but only an act of Congress and can have no greater effect; it was but an exertion of the governmental administrative control over tribal property of tribal Indians, and subject to change by Congress at any time before it was carried into effect and while tribal relations continued.

37 App. D. C. 473, affirmed.

THE facts, which involve the construction and validity of the statutes relating to allotment and distribution of Cherokee lands and funds and the right of children born after September 1, 1902, to participate therein, are stated in the opinion.

*Mr. John J. Hemphill* and *Mr. W. H. Robeson,* with whom *Mr. C. C. Calhoun* and *Mr. Daniel B. Henderson* were on the brief, for appellants.

*The Solicitor General* for appellees.

*Mr. William W. Hastings,* as *amicus curiæ,* filed a brief for the Cherokee Nation.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

The question presented for decision in this case is, whether children born to enrolled members of the Cherokee tribe of Indians after September 1, 1902, and living on March 4, 1906, are entitled to enrollment as members of the tribe and to participation in the allotment and distribution of its lands and funds now being made under the legislation of Congress. The Secretary of the Interior and the Secretary of the Treasury, who are respectively charged with important duties in that connection, have taken the position, and are proceeding upon the theory, that under the acts of April 26, 1906, and June 21, 1906, *infra,* the right of the controversy is with the children; and the purpose of this suit is to test the accuracy of that position, and, if it be held untenable, to enjoin those officers from giving effect to it. The suit was begun in the Supreme Court of the District of Columbia in 1911, and the plaintiffs are three Indian members of the tribe, duly enrolled as such as of September 1, 1902, under the act of July 1,

1902, *infra*, who sue on behalf of themselves and all others
similarly situated. A demurrer to the bill was sustained
and a decree of dismissal entered, which was affirmed by
the Court of Appeals. 37 App. D. C. 473; 39 Wash. Law
Rep. 754. An appeal brought the case here.

During the last twenty years Congress has enacted a
series of laws looking to the allotment and distribution of
the lands and funds of the Five Civilized Tribes, of which
the Cherokee tribe is one, among their respective members,
and to the dissolution of the tribal governments. An ex-
tended statement of these laws, so far as they concern the
Cherokees, as also of the title by which their lands and
funds have been held and of the relations of the tribe
and its members to the United States, will be found in
*Stephens* v. *Cherokee Nation*, 174 U. S. 445; *Cherokee
Nation* v. *Hitchcock*, 187 U. S. 294; *Cherokee Intermar-
riage Cases*, 203 U. S. 76; *Lowe* v. *Fisher*, 223 U. S. 95,
and *Heckman* v. *United States*, *ante*, p. 413.

Anterior to this legislation the lands and funds belonged
to the tribe as a community, and not to the members
severally or as tenants in common. The right of each in-
dividual to participate in the enjoyment of such property
depended upon tribal membership, and when that was
terminated by death or otherwise the right was at an end.
It was not alienable or descendible. And when children
were born into the tribe they became thereby members
and entitled to all the rights incident to that relation.
Under treaties with the United States the tribe maintained
a government of its own, with legislative and other powers,
but this was a temporary expedient and in time proved
inefficient and unsatisfactory. As in the instance of other
tribal Indians, the members of this tribe were wards of the
United States, which was fully empowered, whenever it
seemed wise to do so, to assume full control over them
and their affairs, to determine who were such members,
to allot and distribute the tribal lands and funds among

them, and to terminate the tribal government. This Congress undertook to do. The undertaking was a large one and difficulties were encountered. The first legislation was largely preliminary and experimental and need not be specially noticed, because no material change in the situation resulted therefrom.

The act of July 1, 1902, 32 Stat. 725, c. 1375, which related only to the Cherokees and is spoken of as the Cherokee Agreement, was quite comprehensive and is the one upon which the plaintiffs here rely. It made provision for ascertaining who were members and permanently enrolling them (§§ 25–30), for reserving certain of the tribal lands for public purposes (§ 24), for appraising the other lands (§§ 9, 10), and for allotting in severalty to each enrolled member land equal in value to 110 acres of the average allottable lands (§ 11). It declared that the enrollment should be made "as of September 1, 1902," and should include "all persons then living" and entitled to enrollment (§ 25); that "no child born thereafter" should be entitled to enrollment or "to participate in the distribution of the tribal property" (§ 26); that during the months of September and October, 1902, applications could be received for the enrollment of infant children born to recognized and enrolled members on or before September 1 of that year, but that the application of no person whomsoever for enrollment should be received after October 31, 1902 (§ 30); that no person not enrolled should be entitled to "participate in the distribution of the common property" of the tribe, and those who were enrolled should "participate in the manner set forth" in the act (§ 31); that the enrollment should be made in partial lists, which, when approved by the Secretary of the Interior, were to constitute parts of the final roll "upon which allotment of land and distribution of other tribal property" should be made, and that when lists embracing all persons lawfully entitled to enrollment were

made and approved the roll should "be deemed complete" (§ 28). There were provisions, that "no allotment of land or other tribal property" should be made on behalf of any enrolled person dying *prior* to September 1, 1902, but that his right in the lands or other tribal property should be deemed extinguished (§ 31), and that if any enrolled person should die *after* September 1, 1902, and before receiving his allotment, the lands to which he would have been entitled if living should be allotted in his name and should, "with his proportionate share of other tribal property," descend to his heirs (§ 20). The act declared that the tribal government should not continue longer than March 4, 1906 (§ 63), directed the payment in full, out of the tribal funds, of the lawful indebtedness of the tribe incurred up to the time of its dissolution, and authorized a *pro rata* distribution, among the enrolled members, of the tribal funds remaining after the dissolution of the tribal government and the payment of its indebtedness (§§ 66, 67). But it made no specific provision for the distribution or disposal of tribal lands remaining after the prescribed reservations and allotments were made.

But the tribal government was not dissolved on March 4, 1906. By joint resolution of March 2, 1906, Congress provided that the tribal existence and the tribal government should continue until all property of the tribe, or the proceeds thereof, should be distributed among the individual members (34 Stat. 822); and by the act of April 26, 1906, they were further continued until otherwise provided by law (34 Stat. 137, 148, c. 1876). On those dates the work contemplated by the act of July 1, 1902, had not been completed. Some of the applications for enrollment, received within the time prescribed in the act, had not been acted upon; some of the enrolled members had not selected their allotments, and litigation was pending which involved the rights of some who had been enrolled and of others whose applications were awaiting

action. In addition to this, some who otherwise were entitled to enrollment had filed applications therefor after the time prescribed, and the tribal council of the Cherokees had requested that children born after September 1, 1902, and before March 4, 1906, who but for the limitation in the act of July 1, 1902, would be entitled to participate in the allotment and distribution of the tribal lands and moneys equally with members born prior thereto, be admitted to such participation, if possible, and if that could not be done, that each child born between those dates be given a sum of money sufficient to place him, as far as possible, on an equal footing with the others.

The act of April 26, 1906, unlike that of July 1, 1902, was not limited to the Cherokees, but it did in express terms include them. By its twenty-eighth section it continued the tribal existence and the tribal government, as just indicated; by its first section it authorized the enrollment of a class of persons whose applications therefor were made prior to December 1, 1905, and were not allowed solely because not made in time; and by its second section, as amended June 21, 1906, 34 Stat. 325, 341, c. 3504, it provided as follows:

"That for ninety days after approval hereof applications shall be received for enrollment of children who were minors living March fourth, nineteen hundred and six, whose parents have been enrolled as members of the Choctaw, Chickasaw, Cherokee, or Creek tribes, or have applications for enrollment pending at the approval hereof, and for the purpose of enrollment under this section illegitimate children shall take the status of the mother, and allotments shall be made to children so enrolled. If any citizen of the Cherokee tribe shall fail to receive the full quantity of land to which he is entitled as an allotment, he shall be paid out of any of the funds of such tribe a sum equal to twice the appraised value of the amount of land thus deficient. . . . *Provided,*

That the rolls of the tribes affected by this Act shall be
fully completed on or before the fourth day of March,
nineteen hundred and seven, and the Secretary of the
Interior shall have no jurisdiction to approve the enroll-
ment of any person after said date: *Provided*, That nothing
herein shall be construed so as to hereafter permit any
person to file an application for enrollment or to be en-
titled to enrollment in any of said tribes, except for
minors the children of Indians by blood, or of freedmen
members of said tribes, . . . as herein otherwise pro-
vided. . . ."

By its sixteenth and seventeenth sections it further pro-
vided that after the making of the allotments provided for
in that and other acts, the residue of the lands, not re-
served or otherwise disposed of, should be sold by the
Secretary of the Interior and the proceeds deposited in the
United States Treasury to the credit of the tribe, together
with moneys arising from other sources, and that there-
after, and when all the just charges against the tribal funds
should be deducted therefrom, the remaining funds should
be distributed per capita to the members then living and
to the heirs of deceased members named in the finally
approved rolls.

The controversy here arises out of the provision in § 2
of the act of April 26, 1906, as amended June 21 following,
for the enrollment of "children who were minors living
March 4, 1906," which the defendants regard as including
children born after September 1, 1902, and living on
March 4, 1906. The appellants contend, first, that it
does not include children born after September 1, 1902,
but only such as were born prior to that date and for
whom no application for enrollment was made within the
time limited by the act of July 1, 1902, that is, on or be-
fore October 31, 1902; and, second, that if it does include
children born after September 1, 1902, it arbitrarily takes
from the appellants and others similarly situated property

which is theirs and gives it to others, and therefore is violative of due process of law. The last contention rests upon another, viz., that the act of July 1, 1902, vested in the members living on September 1, 1902, who were enrolled under that act, an absolute right to receive all lands of the tribe not reserved or allotted thereunder and all funds of the tribe not used in the payment of tribal debts.

We are unable to assent to the first contention. The provision in question says "children who were minors living March 4, 1906," and those words as naturally and aptly embrace children born after as before September 1, 1902. Had it been intended, as is claimed, merely to extend the time for filing applications on behalf of children living on September 1, 1902, and therefore born on or before that date, it is reasonable to believe that other words more appropriate to the occasion would have been used. Why say "living March 4, 1906," if as to these children the prior requirement expressed in the words "living on September 1, 1902," was not to be affected? Besides, the Cherokee tribal council, as also the Chickasaw legislature (see H. R. Doc. No. 455, 59th Cong., 1st Sess.), had asked that provision be made for the enrollment of children born up to March 4, 1906, and that would shed some light on the provision were its meaning uncertain. But it does not seem to have been regarded as uncertain by those charged with its enforcement, nor by the courts below. On the contrary, they treated it as plainly including children born after September 1, 1902, and we think that is the right view of it.

We come then to the second contention. It is not proposed to disturb the individual allotments made to members living September 1, 1902, and enrolled under the act of 1902, and therefore we are only concerned with whether children born after September 1, 1902, and living on March 4, 1906, should be excluded from the allotment and distribution. The act of 1902 required that they be

excluded, and the legislation in 1906, as we have seen, provides for their inclusion. It is conceded, and properly so, that the later legislation is valid and controlling unless it impairs or destroys rights which the act of 1902 vested in members living September 1, 1902, and enrolled under that act. As has been indicated, their individual allotments are not affected. But it is said that the act of 1902 contemplated that they alone should receive allotments and be the participants in the distribution of the remaining lands, and also of the funds, of the tribe. No doubt such was the purport of the act. But that, in our opinion, did not confer upon them any vested right such as would disable Congress from thereafter making provision for admitting newly born members of the tribe to the allotment and distribution. The difficulty with the appellants' contention is that it treats the act of 1902 as a contract, when "it is only an act of Congress and can have no greater effect." *Cherokee Intermarriage Cases*, 203 U. S. 76, 93. It was but an exertion of the administrative control of the Government over the tribal property of tribal Indians, and was subject to change by Congress at any time before it was carried into effect and while the tribal relations continued. *Stephens* v. *Cherokee Nation*, 174 U. S. 445, 488; *Cherokee Nation* v. *Hitchcock*, 187 U. S. 294; *Wallace* v. *Adams*, 204 U. S. 415, 423. It is not to be overlooked that those for whose benefit the change was made in 1906 were not strangers to the tribe, but were children born into it while it was still in existence and while there was still tribal property whereby they could be put on an equal, or approximately equal, plane with other members. The council of the tribe asked that this be done, and we entertain no doubt that Congress in acceding to the request was well within its power.

*Decree affirmed.*