## ARNOLD *v.* LANE.

INDIANS; LIENS; STATUTES.

The attorney's liens for services rendered and expenses incurred in the matter of the claims of the Mississippi Choctaws to citizenship in the Choctaw Nation, given by acts of Congress, April 26, 1906 (34 Stat. at L. 137, chap. 1876.), and May 29, 1908 (35 Stat. at L. 444, chap. 216), created no vested rights which were beyond the power of Congress to impair by subsequent legislation.

No. 2513. Submitted October 15, 1913. Decided November 3, 1913.

HEARING on an appeal by the plaintiff from a decree of the Supreme Court of the District of Columbia dismissing a bill to enjoin the payment of money in the hands of the Secretary of the Interior to the Mississippi Choctaws.      *Affirmed.*

The COURT in the opinion stated the facts as follows:

The appellant, James E. Arnold, filed his bill against Walter L. Fisher, Secretary of the Interior, on October 30, 1911, for

an injunction restraining the payment of certain funds under his official control, to certain Indians, known as Mississippi Choctaws.

The bill recites the following acts of Congress:

(1) "That the court of claims is hereby authorized and directed to hear, consider, and adjudicate the claims against the Mississippi Choctaws of the estate of Charles F. Winton, deceased, his associates, and assigns, for services rendered and expenses incurred in the matter of the claims of the Mississippi Choctaws to citizenship in the Choctaw Nation, and to render judgment thereon on the principle of *quantum meruit,* in such amount or amounts as may appear equitable or justly due therefor, which judgment, if any, shall be paid from any funds now or hereafter due such Choctaws by the United States. Notice of such suit shall be served on the governor of the Choctaw Nation, and the Attorney General shall appear and defend the said suit on behalf of said Choctaws." Approved April 26, 1906. [34 Stat. at L. 140, chap. 1876, sec. 9].

(2) "The court of claims is hereby authorized and directed to hear, consider, and adjudicate the claims against the Mississippi Choctaws of William N. Vernon, J. S. Bounds, and Chester Howe, their associates or assigns, for services rendered and expenses incurred in the matter of the claims of the Mississippi Choctaws to citizenship in the Choctaw Nation, and to render judgment thereon on the principle of *quantum meruit* in such amount or amounts as may appear equitable and justly due therefor, which judgment, if any, shall be paid from any funds now or hereafter due such Choctaws as individuals by the United States. The said William N. Vernon, J. S. Bounds, and Chester Howe are hereby authorized to intervene in the suit instituted in said court under the provisions of sec. 9 of the act of April twenty-sixth, nineteen hundred and six, in behalf of the estate of Charles F. Winton, deceased, Provided; That the evidence of the interveners shall be immediately submitted; and provided, further: That the lands allotted to the said Mississippi

Choctaws are hereby declared subject to a lien to the extent of the claims of the said Winton and of the other plaintiffs authorized by Congress to sue the said defendants, subject to the final judgment of the court of claims in the said case. Notice of such suit or intervention shall be served on the governor of the Choctaw Nation, and the Attorney General shall appear and defend the said suit on behalf of the said Choctaws." Approved, May 29, 1908 [35 Stat. at L. 457, chap. 216, sec. 27].

It is alleged that during the year 1897 plaintiff performed services on behalf of the said Mississippi Choctaws in the matter of their claims to citizenship in the Choctaw Nation.

That in a suit in the court of claims brought under the acts above recited, plaintiff has filed petitions praying judgment against the said Mississippi Choctaws for services rendered and moneys expended in prosecuting their claims to citizenship. That the roll of the Mississippi Choctaws, of record in the Department of the Interior, and under which they acquired the full rights of citizenship in the Choctaw Nation, contains the names of 1,643 persons, including adults and minors.

That through the services rendered and expenses incurred by plaintiff and other persons who are claimants in the court of claims in the said case of Winton and others, each of said Mississippi Choctaws was placed upon said roll, and thereby acquired allotments of land and interest in funds and other properties of the Choctaw Nation, the average value of which is about $8,000 to each individual.

That in the petition in the court of claims plaintiff has demanded judgment against each individual Mississippi Choctaw upon said roll, for services rendered, and also against certain individuals of them in additional sums for services rendered and expenses incurred for the special benefit of such individuals.

That said suit has been pending about four years, during which much testimony has been taken. That the time for taking testimony has expired, and it is expected that a hearing may be had at an early date. That defendants in said suit have not disputed the fact that services were rendered and expenses in-

curred on their behalf, and the principal question before said court is merely the determination of the amount of judgment to be rendered.

That under the authority of certain acts of Congress, the defendant, through his agent at Muskogee, Oklahoma, sold certain of the allotments of lands to said Mississippi Choctaws.

That proceeds of sales amounting to $132,805.68 came into the possession of defendant as Secretary of the Interior.

That of said amount, $84,076.35 were paid over to the Mississippi Choctaws prior to June 7, 1911, and on said date the remainder of said sum, amounting to $50,225.57, principal and interest, was and is now in his possession.

That by notices given to said Mississippi Choctaws, defendant is about to pay said sum over to them, notwithstanding the said acts of Congress making the judgment of the court of claims a lien upon said funds in behalf of plaintiff Winton and others in said suit.

That defendant has been notified of plaintiff's claim of a lien upon all funds credited to the Mississippi Choctaws.

That besides the funds above described, the Mississippi Choctaws will be entitled to other funds derived from the sale of lands and other property amounting to $132,000, and to a share in other funds the amount of which is unascertained and problematical.

That plaintiff has been notified that the defendant has decided to pay the Mississippi Choctaws the funds due them.

That if the defendant is permitted to pay the Mississippi Choctaws funds on which plaintiff has his lien, he will be deprived of his lien thereon, and the collection of such judgment as he may recover will be delayed, and as plaintiff believes, will be rendered impossible.

The prayer is for an injunction restraining the defendant from paying to said Mississippi Choctaws any moneys now due, or which may become due, them from the United States.

The defendant, in response to a rule to show cause, demurred to the bill.

A supplemental bill, filed August 26, 1912, alleges that by an

act of Congress approved August 24, 1912, the Secretary of the
Interior has been directed to satisfy certain judgments of the
district court of Oklahoma in favor of Albert Lee against six cer-
tain Mississippi Choctaws, amounting in the aggregate to
$5,105, said persons being defendants in the suit in the court
of claims.

That the defendant is about to pay said sums, upon which
plaintiff has his lien aforesaid. An injunction against this pay-
ment is prayed for.

Albert J. Lee, the beneficiary of the act aforesaid, by leave
of the court intervened in the cause and filed an answer to the
bill on October 25, 1912. After setting out the judgments in
his favor, he admits that the defendants therein are parties to
suit in the court of claims; that said judgments are for services
rendered those defendants; and that, after payment thereof,
there will remain to said defendants more than sufficient to sat-
isfy any judgment this plaintiff could possibly recover against
them in said suit.

He denies that plaintiff has any standing in said court of
claims, which has no jurisdiction to determine any claim by him
for services to said Indians, because he is not one of the persons
named ·in said acts of Congress granting the right of action.
He charges that plaintiff did, on March 2, 1907, file a petition
in intervention therein alleging that he was an associate of Win-
ton, the plaintiff therein; but admitted in his testimony taken
in said suit that he was not associated with said Winton, but
claimed his right because he and Winton had been engaged in the
same general business. That in a later petition he claimed to
be an associate of Chester A. Howe; but in his testimony he
stated that Howe merely acted as his attorney; that in 1902
he paid Howe for his services, and that their relations then ter-
minated. That the said cause is still pending, and until the
rendition of judgment therein, no lien can attach to their prop-
erty; and that no vested interest in their property had attached,
and the same was subject to the exclusive control of Congress.

No replication was filed to this answer. On October 25,
1912, a stipulation was filed: "That the demurrer of the de-

fendant to the original bill may stand and be taken as a demurrer to the supplemental bill filed herein, and as a return to the rule to show cause issued on said supplemental bill; and that said issues, *i. e.,* on the original bill and the supplemental bill, and the rule to show cause, together with the issue raised by the intervener herein on his answer to the rule, may be heard by the court as one issue."

On November 29, 1912, the justice presiding in the equity court filed an opinion and announced that, in accordance therewith, he would enter a decree sustaining the demurrer.

December 6, 1912, plaintiff filed an amendment to his original bill, alleging that the accounts of plaintiff against said individual Mississippi Choctaws aggregating $247,000 have been submitted to the court of claims, and testimony taken in support thereof; and that a judgment against said Mississippi Choctaws for 25 per cent of the value of their lands and allotments, the same having been testified to as a reasonable fee, would amount to the sum of $2,000 for each individual; that the funds derived, and to be derived, by the said Indians from sales of lands and other sources, will not exceed the sum of $2,000, and petitioner is informed and believes that the same will not amount to one half of that amount; and that the funds and property of the Indians will be insufficient to pay said judgments. The payment contemplated by the Secretary was provided for by resolution approved August 22, 1911 (37 Stat. at L. 44).

On the same day the decree of the court reciting that the cause had been heard on the defendant's demurrer to the original, amended, and supplemental bills, and upon the return of the intervener to show cause, discharged the rule to show cause and dismissed the bills, with costs.

*Mr. J. H. Ralston, Mr. F. L. Siddons,* and *Mr. W. E. Richardson* for the appellant.

*Mr. Charles W. Cobb,* Assistant Attorney General for the Interior Department, and *Mr. F. W. Clements* and *Mr. C. Ed-*

*ward Wright,* Assistants, and *Mr. Webster Ballinger* for the appellees.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The opinion of the learned justice did not notice the objection that the plaintiff was not a judgment creditor, or that he was not an associate of said Winton or Howe within the acts of Congress aforesaid, or consider whether, under the facts alleged, there would not remain a sufficient sum receivable by the Indians, to satisfy any possible judgment that plaintiff might recover, notwithstanding the contemplated payments by the defendant which were sought to be restrained. It is to be noted that in the fourth paragraph of the bill it is alleged that the amount which each Mississippi Choctaw would receive of the allotments and funds would amount to $8,000.

Deducting one fourth, the amount claimed, there would remain $6,000 each for final distribution. The amendment, before stated, to another paragraph of the bill, it is true, alleges that the sums received would not amount to more than $2,000, or possibly $1,000, to each individual; but this allegation is inconsistent with, and repugnant to, the allegation that the amount of plaintiff's claim, to wit, 25 per cent of the amount due each individual, would be $2,000 *per capita.* Moreover, the undenied answer of the intervener, upon which the cause was submitted with the original and amended bill, contained an express denial that the remaining funds would not be more than sufficient to discharge any possible judgment of the court of claims in favor of the plaintiff. This possible judgment is 25 per cent of the amount awarded each Indian.

It is possible that the case might have been decided upon this proposition, for, in a hearing upon bill and answer, the answer is to be taken as true. But the court preferred to rest its decision upon the broader ground that, assuming the acts of 1906 and 1908, heretofore recited, to have created a lien upon the Indian lands and funds in favor of the beneficiaries thereof

and their associates, which may have included plaintiff, they took no vested interest thereby beyond the power of Congress to impair by subsequent legislation.

Defendant Fisher having retired from office, his successor, Franklin K. Lane, has been substituted as party appellee in his stead.

It is unnecessary to consider or determine the minor questions in the case, as the learned trial justice is right in his conclusions. *Gritts* v. *Fisher,* 224 U. S. 640, 648, 56 L. ed. 928, 933, 32 Sup. Ct. Rep. 580. In that case the plaintiffs, claiming that a prior act determined who were members of the Indian tribe entitled to an allotment, argued that a subsequent act permitting additions to the roll of distributees impaired the rights vested by the earlier act.

Stating and denying this contention, Mr. Justice Van Devanter, speaking for the court, said: "But it is said that the act of 1902 contemplated that they alone should receive allotments and be the participants in the distribution of the remaining lands, and also of the funds, of the tribe. No doubt, such was the purport of the act. But that, in our opinion, did not confer upon them any vested right such as would disable Congress from thereafter making provision for admitting newly born members of the tribe to the allotment and distribution. The difficulty with the appellant's contention is that it treats the act of 1902 as a contract, when 'it is only an act of Congress and can have no greater effect.' *Cherokee Intermarriage Cases,* 203 U. S. 76, 93, 51 L. ed. 96, 103, 27 Sup. Ct. Rep. 29. It was but an exertion of the administrative control of the government over the tribal property of tribal Indians, and was subject to change by Congress at any time before it was carried into effect, and while the tribal relations continued." (Citing previous decisions.) See *United States* v. *Sandoval,* October 20, 1913 [231 U. S. 28, 58 L. ed. —, 33 Sup. Ct. Rep. 1].

There was no error in dismissing the bills, and the decree is affirmed, with costs.                          *Affirmed.*