Green, Judge,
delivered the opinion of the court:
The plaintiff’s action is shown by the petition to be based' upon an act of Congress which was approved March 19, , 1924 (43 Stat. 27), authorizing a suit to be begun against the United States in this court. This act (omitting the title and the last four sections thereof which are not material to the decision of this case) reads as follows:
“Be it enacted by the Senate and Rouse of Represented ■ fives of the United States of America in Gongress assembled,. That jurisdiction be, and is hereby, conferred upon the Court of Claims, notwithstanding the lapse of time or statutes of limitation, to hear, examine, and adjudicate and render judgment in any and all legal and equitable claims arising under or growing out of any treaty or agreement between the United States and the Cherokee Indian Nation or Tribe, or arising under or growing out of any act of Congress in relation to Indian affairs, which said Cherokee Nation or Tribe may have against the United States, which claims have not heretofore been determined and adjudicated on their merits by the Court of Claims or the Supreme Court of the United States.
“ Sec. 2. Any and all claims against the United States within the purview of this act shall be forever barred unless suit be instituted or petition filed as herein provided in the Court of Claims within five years from the date of approval of this act, and such suit shall make the Cherokee Nation-party plaintiff and the United States party defendant. The ■ petition shall be verified by the attorney or attorneys em- • ployed to prosecute such claim or claims under contract ■ with the Cherokees approved by the Commissioner of In- ■ dian Affairs and the Secretary of the Interior; and said! contract shall be executed in their behalf by a committee' chosen by them under the direction and approval of the Commissioner of Indian Affairs and the Secretary of the-Interior. Official letters, papers, documents, and records, or certified copies thereof, may be used in evidence, and the departments of the Government shall give access to the- *3 attorney or attorneys of said Indian nation to such treaties, papers,’ correspondence, or records as may be needed by the attorney or attorneys of said Indian nation.
“ Seo. 8. In said suit the court shall also hear, examine, consider, and adjudicate any claims which the United States may have against said Indian nation, but any payment which may have been made by the United States upon any •claim against the United States shall not operate as an estoppel but may be pleaded as an offset in such suit.”
The defendant demurs to the petition on two grounds:
First, that the parties plaintiff, the “ Cherokees by blood ”, are not authorized to maintain this suit by the terms of the jurisdictional act; and
Second, that the issues raised therein have heretofore been heard and determined on their merits, and are, therefore, res judicata.
We do not think it is necessary to go into an extended discussion of the questions raised by the demurrer. In considering the objection first made, we find that the petition is very peculiarly drawn. It is entitled, “ The Cherokee Nation, Plaintiff v. The United States of America, Defendant ”, but the petition itself recites, “ The plaintiff, the Cherokee Tribe of Indians, of the State of Oklahoma, through or in the name of the Cherokee Nation, and for its petition, respectfully shows ”, etc. The reason for preparing the petition in this manner becomes evident upon an examination of the act under which suit is brought which confers jurisdiction on the Court of Claims to “ render judgment in any and all legal and equitable claims * * * which said Cherokee Nation or Tribe may have against the United States ”; and also that “ such suit shall make the Cherokee Nation party plaintiff and the United States party defendant ”, and the court may also “ adjudicate any claims which the United States may have against said Indian nation.”
The petition recites further that this suit is brought for and on behalf of those Cherokees by blood who comprise the Cherokee Tribe or Cherokee Nation of Indians. Plaintiff expressly declares that—
“ This suit is not brought by or for the Cherokee National Government nor by or for citizens of the Cherokee Nation as .such.”
*4 It is further said in the petition that the individuals in whose behalf this suit is brought are the Cherokees by blood.
These statements and other recitals in the petition show clearly, as we think, that the suit is not brought by the “ Cherokee Nation”, as used in the act under which the suit is brought, but that it is brought upon a claim of those individual members of the Cherokee Nation or Tribe who are designated in the petition as “ Cherokees by blood.”
Whether we say that the court can take judicial notice’ from well-known facts in history, the treaty of 1866, and the-decisions of this court and the Supreme Court, to which reference will hereinafter be made, that the Cherokees by blood are only a part of the Cherokee Nation, or that these decisions treat the Cherokees by blood as only a part of the-Cherokee Nation, is immaterial. It is quite clear that in these decisions from which citations will be hereinafter-made, this court and the Supreme Court treated the Cherokees by blood as only part of the Cherokee Nation, and in effect held that they were part of that nation which had a constitution and with which the United States made a treaty in 1866.
It follows from what we have said above that a case commenced by the Cherokees by blood is not one in which the Cherokee Nation is made party plaintiff. The allegation that a case is commenced by the Cherokee Tribe, through or in the name of the Cherokee Nation, does not help the plaintiff. Manifestly the Cherokee Tribe, or Cherokees by blood, if these two expressions mean the same thing, which we doubt, has no authority to- act for the Cherokee Nation and bring suits in its name. The first ground of the demurrer must be sustained.
Considering next the second ground of the demurrer, to wit, that the matters in controversy herein are res judicata, we find that defendant bases its argument principally on two cases and the treaties made by the United States with, the Cherokee Nation. The court will take judicial notice that the Cherokee Nation had a constitution, and of the contents of the treaties made with that nation in 1828, 1833,1835, and 1846. These treaties provided, among other things, for the conveyance to the Cherokee Nation of certain tracts of land,.. *5 one of 7,000,000 acres and one estimated at 800,000 acres, also some other rights or privileges with reference to other land. This constituted all the property of the Cherokee Nation, and, as we shall see, all the property in which the Cherokees by blood were interested and to which they now set up a special claim or allege they have a special interest therein.
The treaty of 1’866 (14 Stat. 799) with the Cherokee Nation provides, among other things, in Article IX, that—
“ They [the Cherokee Nation] further agree that all freedmen who have been liberated by voluntary act of their former owners or by law, as well as all free colored persons who were in the country at the commencement of the rebellion, and are now residents therein, or who may return within six months, and their descendants, shall have all the rights of native Cherokees.”
Article XY also provided in substance for the settling of civilized Indians on unoccupied land within the Cherokee country, in which event “ they shall be incorporated into and ever after remain a part of the Cherokee Nation, on equal terms in every respect with native citizens.”
Article XXIII, among other things, provides for the disposition of the funds due the nation.
The claim on which the suit is brought is set out in the petition on page six as follows:
“ The claim asserted herein against the defendant is for the value of lands and funds, which, plaintiff alleges, were owned exclusively by the Cherokee Indians, and which were by defendant’s officers and agents wrongfully, without the consent and over the protest of;1 and without compensation to, the Cherokee owners, allotted and paid by defendant’s officers to certain freedmen and free colored persons, described in articles 4, 5, 6, and 9 of the treaty of July 19, 1866 (14 Stat. 799), * *
It will be noted that the claim in the petition is in substance that certain land and funds were owned exclusively by the Cherokee Indians and allotted and paid by the “ defendant’s officers to certain freedmen and free colored persons, described in * * * the treaty of July 19, 1866.” But there is nothing in the petition that shows that after the execution of these treaties, which disposed of all of the *6 property which the Cherokee Indians had, there was in fact any lands and funds “ owned exclusively by the Cherokee Indians ”, nor is there anything to show that any funds or moneys were allotted to the freedmen or their descendants in a manner which did not accord with the provisions of the treaty. Such a statement, unsupported by any recital of facts, is merely a legal conclusion, and even as a matter of law we think the allegation finds no. support in any authority.
The contention of the plaintiff is, in effect, that the ownership and title to all of the Cherokee tribal funds and lands at the time of making the treaty of 1866 were in those members and citizens of the Cherokee Nation designated as Cherokees by blood to the exclusion of all other members of the Cherokee Nation. That this contention is not well founded we think is settled by the case of Journeycake v. Cherokee Nation and the United States, 28 C. Cls. 281, 155 U. S. 196; and Whitmire v. Cherokee Nation, 30 C. Cls. 138, 30 C. Cls. 180.
In the Whitmire ease, often referred to as the Freedman ease, this court said:
“ In the case of the Delaware Indians v. The Cherokee Nation [Journeycake case] (28 C. Cls. 281; 155 U. S. 196) three things were determined. The first was that the lands of the nation are public property in the same sense that the lands of the United States are public property, and not communal property of native Cherokees. The second was that the Delawares were entitled as citizens by adoption to participate in the distribution of the proceeds of the public domain equally with native Cherokees.” (P. 148.)
In the Whitmire ease the court held that by virtue of the provisions of the Constitution of 1866 the freedmen became citizens equally with the Cherokees, equally interested in the common property, and equally entitled to share in its proceeds when distributed per capita. It is true that this court said, in the opinion in the Freedman case:
“It is possible that there still exists, or hereafter may be revived, a species of property which is an exception to the previously expressed conclusions of the court. * * *
“The court is not informed whether there still exists funds or annuities which were originally treated as communal by distribution per capita and not as national by *7 being set apart for school purposes, charitable uses, etc. * * * Over them the Cherokee government has no legitimate control, and in them the freedmen have no estate or interest.” (Pp. 158-159.)
But this part of the opinion has no force or effect in the case at bar unless the fact appears that there are still in existence some funds or annuities originally treated as “ communal ” and that such funds still remain in such form that over them the Cherokee government has no control and the freedmen have no estate or interest.
The petition in the case at bar merely states that the claim is for the value of lands and funds which plaintiff alleges were owned exclusively by the Cherokee Indians and were wrongfully allotted by defendant’s officers to certain freedmen and free colored persons, that the “ status of the Cherokee lands had not been changed by the treaty of 1866, and that the fee simple title remained in the original owners, the Cherokees by blood ”; also that the ownership of title to the lands or the proceeds therefrom when sold were not changed by the provisions of the treaty but remained vested in the Cherokees by blood, and other similar statements are made which are merely legal conclusions and not statements of fact. Such statements will not support the petition against a demurrer. Neither are there any statements of fact set out in the petition showing that there still exist funds or annuities which were originally treated as not national.
It is insisted on behalf of plaintiff that the plaintiff, namely, the Cherokees by blood, is not concluded by a judgment against the Cherokee Nation. Possibly a case could be imagined in which the Cherokees by blood had some rights which the Cherokee Nation did not possess, but so far as appears from the petition the only property rights which the Cherokees by blood have possessed since the treaty of 1866, which bound not only the Indians of the original tribe but the freedmen and some Indians of other tribes, are the property and rights which they held by reason of being part of the Cherokee Nation, and therefore a judgment which bound the Cherokee Nation would bind the *8 Cherokees by blood. The contention of the plaintiff is in effect that the treaty of 1866 and the prior treaties which we-have mentioned are not binding on the Cherokees by blood. To so hold would practically nullify all of the transactions which the Government has had with the Cherokee Indians since the time when they were removed from the State of' Georgia and require enormous payments to be made to Indians with whom the whole matter was believed to have-been closed through treaties and settlements which involved the transfer of large tracts of land and large amounts of money. , The only allegations in the petition that would support such a position are merely conclusions of law not. supported by any statement of facts.
Many other propositions are argued in the brief for plaintiff, but the reasonable limits of an opinion forbid the discussion of all of them, and we can only say that in our judgment, we think the demurrer should be sustained on both grounds, and it is accordingly ordered that the petition be-dismissed.
Whaley, Judge; Williams, Judge; LittletoN, Judge? and Booth, Chief Justice, concur.