Green, Judge,
delivered the opinion of the court:
The plaintiff, the Chickasaw Nation, brings this suit under a special act of Congress approved June 7, 1924 (43 Stat. 537). This act authorized the Court of Claims to adjudicate any legal claims growing out of any treaty or agreement between the United States and the Choctaw and Chickasaw Indian Nations or Tribes, or either of them, or arising out of affairs which said Choctaw or Chickasaw Nations or Tribes may have against the United States, which claims have not heretofore been determined and adjudicated on their merits by the Court of Claims or the Supreme Court of the United States.
The act also provided that suit under the provisions of this act would be barred if not begun within five years from the date of its approval; also that this court should adjudicate any claims which the United States may have against said Indian Nations but that said claims should not operate as an estoppel and might be pleaded only as an offset. By the act of February 19, 1929 (45 Stat. 1229), the period within which suit could be commenced was extended to June 30, 1930.
In its petition the plaintiff alleges that the sum of $788,-421.70 has been illegally expended by the defendant out of tribal funds which belonged to it and seeks to recover this amount with interest from the time when these expenditures were made. This period covered the years 1913 to 1932, inclusive. The evidence shows that expenditures were made by the Government in the amount and during the period above stated for or in connection with the education of children who were not on the final roll of members of the Chickasaw Nation but who were children of members of that tribe who had been duly enrolled. The issue between the parties is whether such expenditure was legal, it being-conceded that the claim based on this expenditure has not been heretofore determined or adjudicated.
*93 It will be observed that the expenditures alleged to be illegal were made under section 10 of the act of April 26, 1906 (34 Stat. 137,140), which after directing the Secretary of the Interior to assume control of the schools in the Choctaw, Chickasaw, and other tribes and to set aside a sufficient amount of the tribal funds of those tribes to defray the expenses of the schools, provided:
* * * and any of the tribal funds so set aside remaining unexpended when a public school system under a future State or Territorial government has been established, shall be distributed per capita among the citizens of the nations, in the same manner as other funds.
Section 2 of the Act of April 26,1906, as amended by Act of June 21, 1906 (34 Stat. 325), also provided for the enrollment of children living March 4, 1906, of parents who were enrolled members of the Choctaw, Chickasaw, Cherokee, or Creek tribes, or who had applications for enrollment pending.
The contention that these expenditures so made under the act of 1908 were illegal is based upon section 35 of the Choctaw-Chickasaw Supplementary Agreement which was ratified by the act of July 1, 1902 (32 Stat. 641). Section 35 rads—
No person whose name does not appear upon the rolls prepared as herein provided shall be entitled to in any manner participate in the distribution of the common property of the Choctaw and Chickasaw tribes, and those whose names appear thereon shall participate in the manner set forth in this agreement.
The effect of plaintiff’s argument when brought to its logical conclusion is that these provisions vested absolutely the ownership of the tribal funds so that nothing could be done with them except to distribute them among the duly enrolled members of the tribe. We do not think this position can be sustained for many reasons.
Before the Act of April 26, 1906, each of the Five Civilized Tribes — the Choctaw, Chickasaw, Cherokee, Creek, and Seminole — controlled its own schools but section 10 of that act directed the Secretary of the Interior to assume “control and direction” of the schools of those tribes and conduct them *94 under rules and regulations prescribed by bim “retaining tribal educational officers * * * and the present system so far as practicable.” It directed the Secretary to continue these schools until a public school system making proper provisions for the education of the “Indian children of said tribes” was established and to defray all the necessary expenses of the schools out of the funds of each tribe. Obviously Congress intended that the Chickasaw schools carried on by the Secretary with the funds of that tribe were to be attended by all Chickasaw children whether or not they were enrolled members of the tribe and this intention was carried out. The funds were used to educate these children whether or not they were enrolled and it is contended that this constituted a violation of the Choctaw-Chickasaw Supplementary Agreement referred to above.
What Congress did was merely in pursuance of a long established policy and practice in dealing with tribal funds which have been fully sanctioned by the Supreme Court. The Curtis Act passed in 1898 (30 Stat. 495, 510) provided that certain Choctaw and Chickasaw tribal revenues “shall be used for the education of the children of Indian blood of the members of said tribes” and each annual appropriation act for the Indian Service from 1912 to 1928, inclusive, empowered the Secretary of the Interior to expend Chickasaw funds for school purposes which he might deem essential for the tribe. In the case of Gritts v. Fisher, 224 U. S. 640, the Supreme Court held that a statute which made substantially the same provisions for the distribution of Cherokee tribal funds as the one now under consideration did not prevent Congress from thereafter making further provisions with reference to such funds. It may be contended that the case before us differs from the case last cited in that the statute now being considered ratified an agreement with the Indians, but in the Gritts case, supra, there was the same situation as the statute did not go into effect until ratified by the Indians affected. It should be noted also that this court held in Choctaw and Chickasaw Nations v. United States, 81 C. Cls. 63 (certiorari denied), that Congress could open the rolls for the enrollment of Indian children born after 1902 and even extended that right to the *95 children of Choctaw and Chickasaw freedmen. Finally, we think it is clear that the use of Chickasaw funds for the education of non-enrolled children of Chickasaws was within the administrative power of Congress over unallotted Indian property. Congress has full power to use such property for anything that may be reasonably held to be in the interest of the tribe. Cherokee Nation v. Hitchcock, 187 U. S. 294; Lone Wolf v. Hitchcock, 187 U. S. 553; Winton v. Amos, 255 U. S. 373; Sizemore v. Brady, 235 U. S. 441. The case last cited involved the construction of a statutory agreement that parallels in every particular the statute upon which plaintiff relies, but it was held by the Supreme Court that Congress could “adopt another mode of distribution, or pursue any other course which to it seemed better for the Indians.” The funds were used only for the education of the children of enrolled members of the tribe. It must be conceded, as it was in fact conceded in the argument, that this use not only benefited the tribe but was a reasonable and wise provision on the part of Congress.
We think the “distribution” referred to in the act of 1902 referred to the distribution of the Chickasaw property which was specified in the act and was thus limited in its meaning. However this may be, we are of the opinion that Congress did not intend, nor did the Indians understand, that the absolute control of the tribal funds was so vested in the Indians by this legislation that none of these funds could be used for the benefit of the tribe as a whole. In fact the bill itself specified two instances in which the tribal funds were to be used for certain expenses. The cases cited above show the expenditures in controversy were not illegal and that Congress did not exceed its authority in making them. This conclusion makes it unnecessary for any finding to be made with reference to the amount of offsets which the defendant might have against plaintiff’s claim.
Plaintiff’s petition is without merit and should be dismissed. It is so ordered.

On Plaintiff’s Second Motion for New Trial

Plaintiff’s motion for leave to file a second motion for new trial having been allowed, the second motion for new trial *96 was overruled, January 19,1939, in a memorandum opinion, as follows:
The motion is based upon two grounds: One is that the ’opinion does not explicitly state that the amendment to the petition was filed in time, and the other arises from a misunderstanding of the opinion.
The opinion does not recite that under the Act of August 16, 1937, the amendment to the petition was filed in time because counsel for defendant had from the beginning conceded that such was the case, and there was no mention of the matter in argument.
As to the second ground, it was not intended that the opinion should be understood as meaning that counsel for plaintiff made any express admission that the monies of the Chickasaw Nation involved in the case, used in educating the children of the tribe, were expended for the benefit of the nation. The statement made was based on the court’s understanding of the argument presented.
Perhaps in view of the misunderstanding it would be best to amplify and clarify the views of the court on this point. We are of the opinion that when monies are expended in educating generally the children of an Indian tribe any question as to its being for the benefit of the nation as a whole would hardly present a matter which might be the subject of argument or discussion.
The plaintiff’s second motion for new trial must be overruled. It is so ordered.
Whaley, Judge; Williams, Judge; Littleton, Judge; and Booth, Chief Justice, concur.