Littleton, Judge,
delivered the opinion of the court:
This suit was brought under and pursuant to the jurisdictional act of March 19, 1924, 43 Stat. 27, 28, conferring-jurisdiction upon this court to hear, examine, adjudicate, and render judgment in any and all legal and equitable claims arising under or growing out of any treaty or agreement between the United States and the Cherokee Indian Nation or Tribe, or arising under or growing out of any act of Congress in relation to Indian affairs which the Cherokee Nation or Tribe may have against the United States, and a Joint Resolution approved May 13, 1926, 44 Stat., Part 2, page 568, authorizing the Cherokee Indians, The Seminole Indians, the Creek Indians, and the Choctaw and Chickasaw Indians to prosecute claims, jointly or severally, in one or *264 more petitions, as each of said Indian nations or tribes might elect.
The issue presented under the facts alleged in the petition involves a question of law. The essential fact alleged in •the petition which raises this question of law is that in distributing the tribal properties, the United States, pursuant io an Act of Congress hereinafter mentioned, enrolled and made distributions to Cherokee children, members of the iribe, who were born subsequent to September 1,1902.
During the period from about 1890 to 1906 Congress enacted a series of statutes having for their purpose the allotment of lands and distribution of funds of the 'Five Civilized 'Tribes of Indians and the discontinuance of the complete ¡authority of their tribal governments as had theretofore existed. In the act of July 1, 1902, 32 Stat. 116, a comprehensive plan was set forth for ascertaining the members of ihe Cherokee Tribe, enrolling them permanently, and allotting tribal land to them. In that act it was provided that land ¡should be alloted as soon as practicable after the enrollment ■of members of the tribe had been completed; that the tribal ■government as it had theretofore existed should terminate ■not later than March 4, 1906 (tribal governments were later continued for limited purposes); and that surplus property -was to be distributed to members of the tribe so enrolled or to their heirs. This act declared that enrollment should be made as of September 1,1902, and that “no child born thereafter * * * shall be entitled to enrollment or to participate in the distribution of the tribal property of the ■Cherokee Nation” — p. 720. The work required to carry out tire provisions of the act of July 1, 1902, not having been ¡completed by March 4, 1906, the time was extended, first, by ■a resolution of Congress, and shortly thereafter by an act .approved April 26, 1906, 34 Stat. 137. In this act it was ¡expressly provided that children born after September 1, 1902, and who were living on March 4, 1906, should be enrolled and receive distributions as other members of the tribe. It is alleged in the amended petition upon which the ¡demurrer is based, and for the purpose of the demurrer it is admitted, that there were 5,600 Cherokee children born after September 1, 1902, each of whom was enrolled and *265 received the same share in the distribution of tribal properties as did the Cherokee Indians, members of the tribe, who were enrolled as of September 1,1902, under the provisions of the act of July 1, 1902. A more detailed history of events appears in the opinion of Gritts v. Fisher, 224 U. S. 640, which involved the identical facts presented by the case at bar.
Plaintiff tribe contends, first, that the United States by enrolling and distributing a share of the tribal property ■to such children born after September 1, 1902, pursuant to the act of April 26,1906, appropriated or expropriated tribal property to persons not entitled to it and, therefore, should reimburse the tribe for the value of the property so distributed to such children; and, second, in the alternative, that in the event the court should decide adversely to the tribe on its first contention, it should nevertheless be given judgment for the alleged reason that the Cherokee children bom .after September 1, 1902, were given too great a share in the tribal property and to that extent the United States is liable to the tribe for the excess.
We think it is clear that both questions presented are controlled by the principle announced in the opinions in Cherokee Nation v. Hitchcock, 187 U. S. 294; Gritts v. Fisher, 224 U. S. 640; The Choctaw & Chickasaw Nations v. United States, 81 C. Cls. 68, and The Chickasaw Nation v. United States, 87 C. Cls. 91, 95.
The plaintiffs in the case of Gritts v. Fisher, supra, were three Cherokee Indians duly enrolled as of September 1,1902. On behalf of themselves and all others similarly situated, they brought suit against the Secretary of the Interior permanently to enjoin him from enrolling the Cherokee children born after that date. In affirming the decision and ■denying the injunction, the Supreme Court, at page 648, said:
But it is said that the act of 1902 contemplated that they alone should receive allotments and be the participants in the distribution of the remaining lands, and also of the funds, of the tribe. No doubt such was the purport of the act. But that, in our opinion, did not confer upon them any vested right such as would disable Congress from thereafter making provision for admitting newly born members of the tribe to the allotment *266 and distribution. The difficulty with the appellants’ contention is that it treats the act of 1902 as a contract, when “it is only an act of Congress and can have no greater effect.” Cherokee Intermarriage Cases, 203 U. S. 76, 93. It was but an exertion of the administrative control of the government over the tribal property of tribal Indians, and was subject to change by Congress at any time before it was carried into effect and while the tribal relations continued. Stephens v. Cherokee Nation, 174 U. S. 446, 488; Cherokee Nation v. Hitchcock, 187 U. S. 294; Wallace v. Adams, 204 U. S. 415, 423. It is not to be overlooked that those for whose benefit the change was made in 1906 were not strangers to the tribe, but were children born into it while it was still in existence and while there was still tribal property whereby they could be put on an equal, or approximately equal, plane with other members. The council of the tribe asked that this be done, and we entertain no doubt that Congress in acceding to the request was well within its power.
In The Choctaw & Chichasaw Nation v. United States, supra, and The Chickasaw Nation v. United States, supra, this court applied the principle announced in Gritts v. Fisher ease and denied the claims of the tribes mentioned based upon the contention which the plaintiff makes in the instant case— that children born after the date specified in the first statute were not entitled to participate in the distribution and expenditures of tribal property and funds. It cannot now be denied that Congress possesses authority to determine the extent and manner of distribution of tribal property among the members of the tribe and to legislate in reference to tribal property in any manner and to any extent it deems proper for the benefit of the tribe. Cherokee Nation v. Hitchcoch;, 187 U. S. 294; Lone Wolf v. Hiteheoch, 187 U. S. 553; Winton v. Amos, 255 U. S. 373; Sizemore v. Brady, 235 U. S. 441; Shoshone Tribe of Indians v. United States, 299 U. S. 476 and 304 U. S. 111; Chippewa Indians of Minnesota v. United States, 307 U. S. 1.
In The Chickasaw Nation v. United States, supra, this court said:
The case last cited [Sizemore v. Brady, 235 U. S. 441] involved the construction of a statutory agreement that parallels in every particular the statute [act of July 1, *267 1902] upon which plaintiff relies, but it was held by the Supreme Court that Congress could “adopt another mode of distribution, or pursue any other course which to it seemed better for the Indians.”
In the light of these decisions it is manifest that Congress in the act of April 26, 1906, exercised the authority which it clearly possessed to include the Cherokee children born after September 1,1902, for the purpose of enrollment and distribution of tribal property notwithstanding the provision in the earlier act of July 1, 1902, that enrollment should be made as of September 1, 1902, and that no child born thereafter should be entitled to enrollment or in the distribution of tribal property. The act of 1902 did not confer upon individual Indians born prior to September 1, 1902, such a vested right as would preclude Congress thereafter from including, in the benefits of distributions which had not been made, members of the tribe born subsequent to that date. Sae and Fox Indians v. United States, 220 U. S. 481, 483, 485; Gritts v. Fisher, supra, p. 648.
In making the alternative contention, plaintiff admits that for that purpose children born after September 1, 1902, were lawfully enrolled and permitted to share in the distribution of tribal property which had not or already been distributed to other members of the tribe duly enrolled. But it argues that Cherokee children born after September 1, 1902, were given a greater share of tribal property than they were entitled to receive. The theory upon which this contention is based is that by reason of the act of July 1, 1902, the members of the tribe living on September 1, 1902, acquired a vested right to 110 acres of land each; that after the allotment of the 110 acres to each person living on September 1, 1902, as provided in the act of July 1 of that year, the remaining property of the tribe would become “community owned” and upon distribution, as of March 4,1906, would be distributed share and share alike. In other words, plaintiff contends that the Cherokee Indians living on September 1, 1902, but who on that date had not received distributions should have received more of tribal property than those living on March 4, 1906, the difference being measured approximately by the value of the allotment of 110 acres each; *268 whereas, by the act of April 26, 1906, children, born after September 1,1902, were given the same share of tribal property as those who were living on March 4, 1906.
We are of opinion that plaintiff is not entitled to judgment under this contention upon the facts alleged in the petition. While this contention in the form in which it is here advanced appears not to have been made in the case of Gritts v. Fisher, supra, we think the opinion in that case is conclusive as to the principle involved. The court there held that the act of 1902 did not confer upon living members of the tribe any vested right such as would disable Congress from thereafter making provision for admitting newly born members of the tribe to allotment and distribution. At page 648 the court said:
It is conceded, and properly so, that the later legislation is valid and controlling unless it impairs or destroys rights which the act of 1902 vested in members living September 1, 1902, and enrolled under that act. As has been indicated, their individual allotments are not affected.- * * * It is not to be overlooked that those for whose benefit the change was made in 1906 were not strangers to the tribe, but were children born into it while it was still in existence and while there was still tribal property whereby they could be put on an equal, or approximately equal, plane with other members.
In addition to what has been said above, we are of opinion that the alternative contention presents a question which is not within the jurisdiction of this court to determine under the terms and provisions of the jurisdictional act under which this suit was brought. Under this contention plaintiff admits that members of the tribe rightfully received the tribal property. The dispute which plaintiff raises on this phase of the case concerns only the relative shares of certain individuals as members of the tribe who had not received their distributions on September 1, 1902. We are of opinion, as we have held in the past, that the legislation authorizing an action to be brought by the tribe by its express terms permits only a suit by the tribe for the recovery of a judgment, if it is entitled tó one, for the benefit of the whole tribe and not for certain individuals as members of the tribe. In other words, *269 the jurisdictional act authorizes only the making and the adjudication of tribal claims. It seems clear that the right, to adjudicate claims of individual members of the tribe was not intended for the reason that no provision is made in the act authorizing the suit, as to what individuals should, constitute the class entitled to claim. Under the terms of the jurisdictional act any judgment would have to be rendered in favor of the tribe and clearly those members bom after September 1, 1902, and those members of the tribe, if any, to whom allotments may have been made before April 26,1906, could not under any theory participate in a recovery for property which was distributed to them. Cherokee Nation v. United States, 80 C. Cls. 1, 2-4; Sioux Tribe of Indians v. United States, 89 C. Cls. 31, 38.
The demurrer is sustained and the petition is dismissed-It is so ordered.
Whitaker, Judge; Green, Judge; and Whalet, Chief Justice, concur.